GEORGIANA A. MONIES *vs.* CITY OF LYNN.

Essex. Nov. 7, 1877. — Mar. 5, 1878. MORTON & SOULE, JJ., absent.

In an action against a city to recover for injuries occasioned by a defective highway, the issue was whether the defect had existed for twenty-four hours. The judge instructed the jury that the city would be liable for the injury caused by that defect, though a rain on the day of the accident had increased the extent of the defect or the danger to the persons passing over the sidewalk, and, refusing to give in terms an instruction that "there is no defect unless the way is at the time presently perilous or dangerous," gave the instruction that "the jury must find that there was a defect that had existed for more than twenty-four hours that had rendered it unsafe for present travel, though the defect may have been secret and not developed until the time of the accident." *Held*, that the instructions were erroneous.

TORT for personal injuries occasioned by reason of an alleged defect in Market Street in Lynn.

At the trial in the Superior Court, before *Dewey*, J., it was admitted that Market Street was a highway which the defendant was bound to keep in repair; that it was out of repair and defective at the time the plaintiff received the injuries; and that she was in the exercise of due care.

It appeared that on Monday evening, October 7, 1872, the plaintiff, while passing along Market Street, and while opposite a building called Tremont Block, was injured by falling into a hole in the sidewalk, there being no light there at the time

In order to show that the defect had existed for twenty-four hours, the plaintiff offered the following evidence :

Isaac K. Harris, city engineer of Lynn, testified that, in September, 1872, he was applied to for a permit, which he gave, to connect the waste pipe of the Tremont Block with the main sewer in Market Street ; that he kept a record of the weather, from which it appeared that on Thursday, October, 3, 1872, there was rain, and again on Monday evening, October 7, 1872 ; that he kept a record only of such rains as, happening in the daytime, interfered with the work of his laborers, or, if in the night, were so severe as to be exceptional ; and that Market Street is a thoroughfare, and is passed by thousands of people every day.

C. Nelson Orcutt testified that he occupied the building next west of Tremont·Block in the fall of 1872 ; that on September 28, 1872, the sidewalk opposite Tremont Block was opened and a trench was dug, extending from the building to the main sewer, a little beyond the middle of the street ; that the waste pipe of the building was then connected with the sewer by a pipe about ten inches in diameter ; that the trench was filled up, the earth · being replaced and tamped, and the bricks (except some few near the edge-stone) relaid on the sidewalk ; and that outside the edge-stone was a paved gutter, the stones of which were not replaced, but were put in a pile, with some of the dirt, in the gutter, below the place where the trench had been dug.

Orcutt also testified, against the objection of the defendant, that on some day about the middle of the next week, (being the week before the accident,) his attention was called to the condition of the gutter, and that he found a hole, just outside of and close against the edge-stone, in the place from which the paving had been removed ; that it had been raining ; that the hole, which was ten or twelve inches in diameter at the top, and about the same depth, extended down by the side of the edge-stone as far as the bottom of the edge-stone ; that the water went down there and passed out of sight under the sidewalk · that there were indications of water in the hole, which had soaked in and run away ; that the hole was not so large at the bottom as at the top ; that the stones and rubbish placed below the trench had prevented the water from flowing down the gut

ter ; that he scraped some of these stones and rubbish into the hole, and trod it down as well as he could; that on Saturday, October 5, 1872, he found that the gravel and stones with which he had filled the hole had settled so that the hole again appeared, and was at that time about as large as before, and about six or eight inches deep ; that he could see the stones which he had put in on the previous occasion ; that there had been, he thought, another rain since the previous one; that he also filled up this hole ; that on this same day there was a depression in and across the sidewalk, where the trench had been dug, of from one to two inches.   He subsequently said that he could not be certain that he noticed this on Saturday, but did on some one of the latter days of that week.   He also testified that there was at least the usual amount of travel through Market Street and across this sidewalk on Monday, October 7, and that there had been a celebration and procession that day, which probably increased the number of people in the street.

Market Street is seventy-five feet wide at this place, and the sidewalk is between nine and ten feet wide.   The slope of the street for five hundred feet was from the west towards this place in the gutter, and there was no outlet for surface water for that distance.

Willard Dunbar testified that while passing along Market Street, shortly before the accident, with his wife, the sidewalk dropped in under them opposite Tremont Block; that he was nearest the edge-stone, and fell about a foot and a half ; that his wife was on the inside, and he should think the hole into which she fell was about two and a half feet deep.

George T. Monies, the father of the plaintiff, testified that on Tuesday morning, October 8, 1872, he examined the place and found a hole extending nearly across the sidewalk, about four feet wide and as deep as the sewer pipe, about half of which was exposed ; that he could see, through the aperture by which the pipe entered the cellar, and by the side of the pipe, into the cellar, in which was a large amount of water ; that there was an irregular space of an inch or more around the pipe in the cellar wall.

It was admitted that all the dirt of the trench had been washed into the cellar ; and it was also agreed that the aperture

in the cellar wall through which the pipe was laid was never cemented, and was left unfinished.

Several of the witnesses testified to the severity of the rain on Monday evening, and all agreed that it was a heavy rain, although there was not entire agreement in their manner of describing it, nor as to whether the heavy rain was before or after midnight.

The defendant requested the judge to rule that there was no sufficient evidence, upon the question whether the alleged defect had existed for twenty-four hours, to authorize a verdict for the plaintiff. The judge refused so to rule, and ruled that there was evidence for the jury on this point.

The judge, after stating the law generally, instructed the jury as follows :

" The plaintiff contends, 1st, that the trench which was dug a week prior to the accident from the sewer in the street, through and across the sidewalk, was not properly filled up and was not left in a safe condition, that it was left so open, or the earth so unsettled, as to be unsafe.

" 2d. That as early as Thursday, October 3, 1872, there was a rain by which a hole had been made by the water passing from the gutter and under the sidewalk, washing away or softening the earth to that extent as to make it unsafe, and that it had been unsafe from that day.

" The defendant contends that the defect was caused by the rain of October 7th, and that it had not existed for twenty-four hours. Now, if the defect that caused the accident had not existed for twenty-hours before the accident, the plaintiff cannot recover ; but, if the defect had existed for more than twenty-four hours, the city would be liable for the injury caused by that defect, though the rain on the seventh of October had increased the extent of the defect, or the danger to the persons passing over the sidewalk."

At the request of the plaintiff, the judge gave the following instruction :

" If the jury find that, for more than twenty-four hours before the injury to the plaintiff, the sidewalk, at the place where she fell, was in a defective condition, and that the defect, which was the immediate cause of her injury, was the same defect which had existed for twenty-four hours before the injury, then the de

fendant would be liable in this action, if the plaintiff was in the exercise of due care at the time of the injury."

After the conclusion of the charge, the defendant excepted thereto, and requested the judge to instruct the jury as follows:

" 1. ' Safety ' in the instructions given means ' safety for present travel.' In order to find the sidewalk to have been defective, within the meaning of the instructions, the jury must find it to have been defective and unsafe for present travel, or presently dangerous. There is no defect, unless the way is, at the time, presently perilous or dangerous.

" 2. The only defect in this case is an undermining of the sidewalk, and unless the jury find the way to have been so undermined as to have been presently perilous to travellers, for that cause, for twenty-four hours before the accident, the plaintiff cannot recover."

The judge refused to give the first request, but instead thereof gave the following: " ' Safety ' in the instructions given means ' safety for present travel.' In order to find the sidewalk to have been defective, within the meaning of the instructions, the jury must find that there was a defect, that had existed for more than twenty-four hours, that had rendered it unsafe for present.travel, though the defect may have been secret and not developed until the time of the accident."

The judge refused to give the second instruction requested, on the ground that he had already given such instructions as he deemed the case required. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*S. B. Ives, Jr.*, for the defendant.

*E. T. Burley,* (*E. J. Sherman* with him,) for the plaintiff.

LORD, J. The objection to the rulings and instructions of the learned judge, who presided at the trial, is not that, as mere abstract propositions of law, such rulings and instructions were erroneous, but that they did not meet all the requirements of the case. The question to be tried by the jury was whether the defect which caused the injury to the plaintiff had existed for the space of twenty-four hours prior to her injury. It was not, as previously decided in this case, whether the highway was in such a condition as that it was liable to become defective at once. *Monies* v. *Lynn*, 121 Mass. 442.

The liability of cities and towns is limited to actual present existing defects. In *Blood* v. *Hubbardston*, 121 Mass. 233, the court decided that, where a defect for which the town was responsible existed, the town was not relieved from liability because the defect, which was the same defect, had become greater after the surveyor of highways had left it and before the injury resulted from it. But if the defect is not the same defect, although occasioned by the earlier defect, the town is not liable except upon notice or its continuance for twenty-four hours. Suppose, by way of illustration, that the water running down Market Street, passing through the hole which was testified to have existed some days before the accident, entered a drain, and, after running fifty or a hundred feet in a drain, escaped therefrom and undermined a sidewalk of that or some other street ; it could not be contended that the sidewalk thus undermined was in a defective condition until it was actually undermined, although there had long existed a liability to be undermined through the ordinary operation of natural causes.

Giving to the evidence stated in the bill of exceptions the full weight to which it is entitled, and allowing to the plaintiff the benefit of all the inferences which the jury might properly draw from it, we should have difficulty in holding that the plaintiff sustained the burden which was upon her of showing that she was injured by a defect in the highway which had existed for the space of twenty-four hours. But we are not required to decide whether the defendant was entitled to the instruction asked for, that there was no sufficient evidence to authorize a verdict for the plaintiff, because there is another ground, upon which we are clearly of opinion that the defendant's exceptions must be sustained.

The language of the presiding judge, though perhaps not to be misunderstood by the professional hearer, is subject to the criticism that it does not distinguish sufficiently between a legal defect, as applicable to a highway, and a defect in its popular signification. According to the popular understanding of the word, a defect is rather the absence of perfection than any positive quality. That is said to be a defect in machinery, which prevents a continuous use of it without injury; and any instrument is said to be subject to defect, which is liable to be

impaired by ordinary use. In other words, an instrument is defective which does not accomplish continuously the object for which it was designed, although it may do so temporarily; and, in popular language, a way, though presently sufficient, would be deemed defective, if liable to become so, and we think a jury would be quite likely to deem a highway defective when, by the ordinary course of the elements, it might be expected to become out of repair and dangerous; and in several instances we think the presiding judge used language in such manner as to warrant the jury in adopting the popular instead of the legal signification of the word.

For example, he told the jury that "the city would be liable for the injury caused by that defect, though the rain on the seventh of October had increased the extent of the defect, or the danger to the persons passing over the sidewalk." And, when requested by the defendant's counsel to instruct the jury that "there is no defect, unless the way is, at the time, presently perilous or dangerous," he declined to give the instruction in that language, and used this language: "The jury must find that there was a defect that had existed for more than twenty-four hours, that had rendered it unsafe for present travel, though the defect may have been secret and not developed until the time of the accident." We think that this language, thus used by the learned judge, was calculated to give the jury to understand, or at any rate permitted them to understand, that that constituted a defect which by the ordinary operation of natural causes would render the way dangerous.

How far a jury, in the absence of evidence, would be warranted in speculating upon the time when the causes began to operate, or how rapidly they operated, and when or at what time a secret and undeveloped defect existed, it is not important to inquire. It is only necessary to decide, as we have before decided between these parties in this case, that a liability to become defective is not in itself a defect.

*Exceptions overruled.*