HATHERLY A. STODDARD *vs.* INHABITANTS OF WINCHESTER.

Middlesex. November 29, 1892. — January 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Highway Defect — Liability of Town for Negligence of Superintendent of Waterworks — Evidence.*

In an action for injuries occasioned to the plaintiff's horse and wagon by a defect in a highway in the defendant town, it appeared that the accident occurred on a steep incline in the way, where a trench had been dug six months previously for the purpose of laying a water-pipe to supply the people living on that street with water from the town's waterworks. There was evidence that the trench was four and a half to five feet deep, and a great deal of water came into it from the sides or bottom, so that to lay the pipe the workmen were obliged to dam up the trench to hold the water in different sections while laying pipe below, and when the pipe was laid in the section below they were accustomed to take away the dam and let down the water, and afterwards fill up the trench by throwing earth into

the water, and in some portions treading it down; that they could not tread down some portions of it, owing to the water and the soft condition of the filling in the trench; that there was a soft spot, when they dug the trench, near the place of the accident; that the loam and soft material which came out of that spot were thrown back upon the water in the trench; and that the workmen did not tread that down through fear of going in themselves. The superintendent of the waterworks, who had charge of laying the pipe, and who visited the place once or twice a day, denied that there was such a soft spot as testified to by other witnesses; but said that, if there was such a spot, filling in with loam would not make a safe job, and that a proper way to do the work would be to remove the loam and put in gravel. It appeared that the weather was dark and stormy at the time of the accident, and there had been a steady fall of rain for the two preceding days; that the plaintiff's horse suddenly sank into the road bed, going in up to his crupper, with his nigh forward foot resting on solid ground on the opposite side of the ditch; and that the nigh side of the wagon also sank into the ditch, and the earth in the trench was soft to the depth of about four feet. *Held*, that the action could be maintained.

If the work of laying water-pipes in a street of a town is intrusted by the town authorities to the superintendent of its waterworks, the town is liable for the negligence of the superintendent or that of his servants in failing properly to fill the trench dug for the purpose of laying the pipes; and in an action against the town by a person injured, six months afterwards, by reason of such negligent filling of the trench, the jury will be warranted in finding that the town either had notice of the defect, or by the exercise of reasonable diligence might have had notice of it.

In an action against a town by a person injured by reason of the negligent filling of a trench dug in a street of the town for the purpose of laying water-pipes, there was evidence that there was a soft spot when the trench was dug near the place of the accident; and that the loam and soft material that came out of that spot were thrown back upon the water which had come into the trench. The superintendent of the town's waterworks, who had charge of the work of laying these water-pipes, and who also had charge of certain work on a reservoir dam in the town, testified that there was a spot full of loam and soft material found on the line of the dam during the building of it. He was then asked by the plaintiff as to the manner of filling that spot. *Held*, that the question was rightly excluded.

In an action against a town by a person injured by reason of the negligent filling of a trench dug in a street of the town for the purpose of laying water-pipes, a witness, called as an expert by the plaintiff, testified that he had been a civil engineer and contractor for about twenty years; that he had had a wide experience in laying pipes and filling trenches; and he was allowed to testify to the best methods of filling trenches; and he testified further that he had heard the evidence as to the way in which the trench in question had been dug and filled. He was then asked by the plaintiff, " What would be the condition of such a ditch as that after filling in the manner in which you have heard stated ? " and, " What would be proper care to be used upon that trench, and how long should it be looked after and cared for ? " *Held*, that these questions were properly excluded.

TORT, for injuries occasioned to the plaintiff's horse, wagon, and harness by a defect in Lincoln Street in the defendant town. After the former decision, reported 154 Mass. 149, the case was

tried in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

It was admitted by the defendant that Lincoln Street was a public way, and duly accepted as such by the town at the annual March meeting in 1888; that the defendant was bound to keep the way in repair; and that notice of the time, place, and cause of the accident was duly served upon the defendant.

It was also admitted that the defendant had accepted acts of the Legislature empowering it to construct and maintain water-works, lay pipes, and do other acts incidental to supplying the town with water; and that the water board was duly elected to carry the authority into effect.

The evidence tended to prove that Lincoln Street led from Washington Street easterly up a steep incline to Highland Avenue, the latter running about parallel with Washington Street, and there were two or three houses on Lincoln Street; that during the last week in May, 1888, a trench was dug in the northerly side and about fourteen feet from the line of Lincoln Street, for the purpose of laying a water-main to supply the people living upon the street with water from the town's waterworks; that William T. Dotten, superintendent of the waterworks, was authorized by the water board of the town to dig, or cause to be dug, the trench, and to lay the water-pipe therein; that Dotten superintended the work at the trench, visiting it once or twice a day, and also being engaged at other times of the day in other parts of the town on work connected with the waterworks; that while he was away the job on Lincoln Street was under the more immediate charge of Michael E. Holland, a day laborer, one of the employees of the water board, in pursuance of their authority; that the trench was started at the water-main on Washington Street, and continued thence into Lincoln Street; that the trench was from four and one half to five feet deep and about eighteen inches wide, and was dug to the house of Arthur N. Jewett, which was at an elevation of about sixty feet higher than Washington Street; that the workmen encountered a great deal of water coming into the trench, supposed to be from dampness of the soil or from springs, so that to carry on their work they were obliged to dam up the trench to hold the water in different sections while laying the pipe below, and when the

pipe in one section was laid that dam was taken away and the water was allowed to run down upon the pipe which had already been laid, and then the earth was thrown into that water in the process of filling, all the earth removed going back into the trench ; that the workmen trod down portions of the earth as they filled in; that some portions they could not tread down, owing to the water and mushy condition of the filling in the trench; that there was also a soft spot near the house of one Plummer, on Lincoln Street; that the trench was nearly half full of water ; that the loam and soft material which came out of the soft place were thrown back upon the water in the trench, and the men did not tread that down through fear of going in themselves; that nothing further was done to the soft place; that Lincoln Street was used more or less from the time of laying the water-pipe up to the time of the accident; that the plaintiff was a baker, and, on November 27, 1888, was delivering goods to his customers from his wagon, and, about five o'clock in the afternoon of that day, drove upon Lincoln Street to deliver goods at Jewett's house ; that the weather was dark and stormy ; that a steady fall of rain for two days had made the road muddy and soft, and the wheeling was so hard and up such an incline that he stopped his horse above Plummer's house, intending to go the rest of the way to Jewett's on foot; that he turned his team to cramp the wheel, so that the load might rest on the horse as lightly as possible, when suddenly the horse sank into the road-bed, going in up to his crupper, with the nigh forward foot resting on the solid ground on the opposite side of the ditch; that the nigh side of the wagon also sank into the ditch, and the injuries complained of were received ; that the horse and wagon sank into the trench which had been dug for the water-pipe ; and that, at this particular spot, the earth in the trench was soft to a depth of about four feet.

Holland was called as a witness by the plaintiff, and testified that he worked for the water board on the trench, and was in charge of the work while Dotten, the superintendent, was absent during each day; that there was a great deal of water in the trench during the work, and at or near Plummer's house there was a soft spot in the digging; that the material taken out was loam on top and gravel on the bottom ; that the same material

was thrown back again into and upon the water in the trench to fill in with; that no gravel or material was thrown into that soft place other than what came out of it when excavated; and that this process of filling trenches is called puddling, and is the best method of filling trenches.

Dotten was called by the plaintiff to prove his authority in conducting the work, and testified that he was the superintendent of the waterworks of the town, duly appointed by the water board and duly authorized to lay the water-pipe in Lincoln Street. On cross-examination, he stated that he had had a great deal of experience in laying water-pipes, and also on the south reservoir dam in the town; that the trench on Lincoln Street was refilled by throwing the earth into the water in the trench; that this process was the best method of filling trenches; that when the earth in the ditch had settled down, the water all settled out of it and became solid, and then they went over it and gravelled every cavity there was, and levelled it all up; that afterwards, early in July, he drove his horse over it from end to end, and it was perfectly solid; that the street was used constantly afterwards during the summer and fall; and that one could not detect anything but what was perfect and all right, no dampness or moisture, or anything to indicate any trouble. On redirect examination, he was asked by the plaintiff if there was not a soft spot or place full of loam and soft material found on the line of the south reservoir dam during the building of the dam. He answered that there was such a place found there. The following questions were then put by the plaintiff:

" Now, they were careful there, were n't they, to go clear down to rock-bottom and take that soft stuff all out?

" If the soft spot on this Lincoln Street was like that on that dam, would n't it have been reasonable and proper care on the part of you and those under you to remove that loam and soft stuff out of that spot and put in good hard gravel?"

These questions were objected to by the defendant, and excluded by the judge; and the plaintiff excepted.

The witness was further examined as follows:

" *Q.* Now if there was a soft spot in this drain on Lincoln Street, composed of loam and soft earth, what would have been the proper and safe method of filling in that spot? *A.* There was n't any.

" *Q.* If there was, I say? *A.* That would be to remove the loam.

" *Q.* What would you put in, in its place? *A.* I should put gravel.

"*Q.* And if there was such a spot there, and the loam and soft stuff was not removed and gravel put in, it would not be a safe job? *A.* If there was any quantity of loam it might not be. I am not prepared to say that it would not be.

" *Q.* Was there any such spot? *A.* No, sir."

Seth Perkins, who was called as an expert by the plaintiff, testified that he was a civil engineer and contractor, and had been in that business since 1873; that he had had a large experience in laying pipes; and that he had had full charge of the putting in of the great sewer work of the city of Boston, and had had a wide experience in filling trenches. He was allowed to testify as to the best methods of filling trenches. He testified further, that he had heard the testimony of Holland as to the way in which the trench on Lincoln Street had been dug, and how the soft spot had been filled. The plaintiff then put the following questions:

" What would be the condition of such a ditch as that after filling in the manner in which you have heard stated?

" Now can you tell us what would be proper care to be used upon that trench, and how long should it be looked after and cared for? "

These questions were objected to by the defendant, and excluded by the judge; and the plaintiff excepted.

At the conclusion of the plaintiff's case, the judge ruled that, on the foregoing facts, the plaintiff was not entitled to recover; and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*J. T. Wilson,* for the plaintiff.

*S. J. Elder,* for the defendant.

KNOWLTON, J. In the opinion which was given in this case when it was first before us are these words: " The fact that a road is so constructed that it is not likely to keep in good condition for a great length of time, will not impose liability on the town which is bound to keep it in repair, unless the danger is so imminent that it can fairly be said to show a want of reason-

able care and diligence to omit guarding against it at once."
*Stoddard* v. *Winchester*, 154 Mass. 149.

There was abundant evidence to warrant the jury in finding
the road defective within the principle thus stated. The acci-
dent occurred on November 27, 1888, on a steep incline, where
a trench had been dug during the last week in May of the same
year. There was evidence that this trench was four and a
half to five feet deep, and that a great deal of water came into
it from the sides or bottom, so that to lay the pipe the workmen
were obliged to dam up the trench to hold the water in different
sections while laying pipe below, and when the pipe was laid in
the section below, they were accustomed to take away the dam
and 'let down the water, and afterwards fill up the trench by
throwing earth into the water, and in some portions treading it
down. There was evidence that they could not tread down
some portions of it owing to the water and the soft condition of
the filling. There was also evidence that there was a soft spot
when they dug the trench near the place of the accident, and
that the loam and soft material that came out of that spot were
thrown back upon the water in the trench, and that the men
did not tread that down through fear of going in themselves.
The superintendent of the waterworks, who had charge of laying
the pipe and who visited the place once or twice a day, denied
that there was such a soft spot as testified to by other witnesses,
but said, if there was such a spot, filling in with loam would not
make a safe job, and that a proper way to do the work would be
to remove the loam and put in gravel.

The weather was dark and stormy at the time of the accident,
and there had been a steady fall of rain for the two days immedi-
ately before. The horse suddenly sank into the road-bed, going
in up to his crupper, with his nigh forward foot resting on solid
ground on the opposite side of the ditch. The nigh side of the
wagon also sank into the ditch, and the earth in the trench was
soft to the depth of about four feet. The evidence in regard to
the manner of doing the work was not before the court at the
former trial. The doctrines laid down in *Monies* v. *Lynn*, 121
Mass. 442, and 124 Mass. 165, have been modified by the passage
of the St. of 1877, c. 234. Pub. Sts. c. 52, § 18. *Olson* v. *Wor-
cester*, 142 Mass. 536.

From this evidence the jury might well have found that the workmen were negligent in digging and filling the ditch, and that the road was defective for six months previously to the accident, and that the exercise of reasonable diligence would have prevented the existence of the particular defect which caused the accident. Any one who knew the condition of the earth there, and how the ditch was filled, might well expect that the place of the excavation would become soft and dangerous any day on the fall of a heavy rain. There was evidence that the way was defective, and that the plaintiff was in the exercise of due care.

Was there evidence that the town had notice of the defect, or might have had notice thereof, by the exercise of proper care and diligence? If the work of digging and filling the trench had been done by the authorities in charge of the repairs of the streets, the question would be too simple for argument. It was done by the superintendent of the waterworks, whose general duty was to attend to another department of the public business. Was he an agent or servant of the town in reference to his work done in the public streets, so far as to make the town chargeable with his negligence in doing that which would naturally affect the condition of the streets? We are of opinion that he was. He was certainly an agent of the town in his own department. He was permitted by the town to represent it in digging up streets to lay water-pipes. His work necessarily created dangers in the streets, and called for careful attention in restoring the streets to a safe condition. If that work was intrusted to him either by the town in its corporate capacity, or by the public officers who were charged with the duty of keeping the streets safe in behalf of the town, the town ought to be chargeable with his negligence to the same extent as if the work had been done by a highway surveyor. If the negligence was that of the servants of the superintendent of the waterworks, the same rule should apply as if the work had been done by the servants of the highway surveyor. They are all engaged in the service of a common employer in doing work affecting the safety of the public streets. There is no good reason for making a distinction between them in regard to charging the town with notice of their acts. In *Hand* v. *Brookline*, 126 Mass. 324, and

*Monies* v. *Lynn*, 121 Mass. 442, the court seems to make no distinction between defects caused by those charged with the re-pairs of the streets and those caused by persons engaged in some other department of the city or town. We are of opinion that there was evidence on which it might have been found that the town either had notice of the defect, or by the exercise of reasonable diligence might have had notice of it.

The question to the witness Dotten in regard to the work on the dam was rightly excluded. That work had no connection with the work in the trench, and there was no occasion to inquire about it.

The questions to the expert witness Perkins were also rightly ruled to be improper. He had no personal knowledge of the trench, and the questions called for an expression of opinion founded on his understanding of the testimony, and his inferences of fact from it. If he had answered the questions, the jury would not have known the effect to be given to his answers, because they would not have known what view he took of the facts, nor on what he was giving his opinion. The proper way to interrogate an expert, to obtain his opinion on facts to be derived from testimony, is to put questions on hypothetical statements of facts, or to ask the witness to give opinions founded on possible views of the evidence, stating in connection with the opinions the hypothetical facts to which they relate, so as to make them intelligible. An expert witness cannot be asked to give an opinion founded on his understanding of the evidence, against the objection of the other party, except in cases where the evidence is capable of but one interpretation. In other words, questions must be so framed that the witness will not be called upon to give an answer involving his opinion on disputed questions of fact which are not proper subjects for the testimony of an expert, nor to intimate to the jury his opinion as to the credibility of any of the witnesses. *Woodbury* v. *Obear*, 7 Gray, 467. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169.

*Exceptions sustained.*