HENRY BINGHAM *vs.* CITY OF BOSTON.

Suffolk.    January 16, 1894. — March 1, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Defective Highway — Inference of Want of Diligence by City.*

In an action against a city for injuries occasioned to the plaintiff's horse and wagon, very early in the morning, by sinking into a hole in a street, where a trench had been dug for the purpose of laying a drain under a permit from the city, although there is evidence on the part of the city tending to show that the trench was properly filled and left in that condition on the afternoon preceding the acci-

dent, the jury will be warranted in finding that, by the use of reasonable care and diligence, the proper officers of the city might have known of the defect in time. to remedy it.

TORT, for injuries occasioned to the plaintiff's horse and wagon by an alleged defect in School Street in the West Roxbury district of Boston. Trial in the Superior Court, before *Bishop*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in behalf of the plaintiff that one Donnelly was driving the plaintiff's horse and wagon upon School Street, up grade, on the morning of June 29, 1889, between four and five o'clock, about daylight, when, without warning, his horse's fore feet sank below the surface of the street; that Donnelly saw, up to the instant of sinking, nothing in the place where the horse's feet sank that was out of the way, or different from the surface of the rest of School Street, which was in good repair, and over which he had just passed in safety; that he was keeping a proper lookout, and giving proper attention to driving the horse, before he reached the spot where the horse sank; and that in getting the horse out of the place the horse and wagon received the injuries complained of.

It also appeared that at the time of the accident there was a place in the street extending from the sidewalk across the roadway to the car track near the middle of the street, some four to five feet broad, where there was soft mud, into which the horse sank over his gambrels; that the horse pulled himself and the front wheels of the wagon out, but the hind wheels sank in up to the hubs; that the mud was too soft to bear a man, and planks were put down to stand upon in getting out of the wagon; and that another horse was put on and the wheels "jacked" up with a timber so as to get the wagon out.

One Kelly, called as a witness by the plaintiff, testified that, as an inspector of house sewer connections for the sewer department of the defendant city, he inspected a house drain connection on School Street on June 25, 1889, that there was then a trench in the street; that he inspected the pipes connected with the main sewer, and connections were properly made and were tight; and that the person who owned the house where the drain was lowered and relaid was named Messer. On cross-examination, he testified that Samuel Gist, under whose superintendence the

drain was constructed, was a competent and skilful drain layer, and did very good work.

One Carter, called as a witness by the plaintiff, testified that he was, at the time of the trial, superintendent of streets of the defendant city; that he had with him a book of "stubs," on which applications were made for permits for excavations in streets; that the missing leaves annexed to the "stubs" were torn out and given to the persons asking the permits; that the permits issued were probably destroyed after they were returned to the department; that the permits were collected by the police officers where the excavation was made; that the permit of which the application stub remained in the book could not be found; and that he could not give the form of permit in use at the time of the accident. The following application stub was then admitted in evidence:

"817 Application. Boston, June 21, 1889. I hereby apply for permission to open School Street, Roxbury, near Byron Court, for the estate of Messer, to repair a drain, . . . and I agree to make connection with the sewer only in the presence of the inspector. Should the work consist of repairs only, I will not cover up the same until the inspector has seen the work; and I will fulfil all the conditions required in rules for drain layers. Samuel Gist."

It was admitted that School Street is a public street of the defendant city; and that due notice of the time, place, and cause of the injury was given to the defendant.

Michael Callahan, a police officer of Boston, testified that his route was over School Street; that he saw the trench, and took up the permit to open the street; that he saw the trench being filled at two o'clock in the afternoon of the day before the accident, and again at about five o'clock; that it then appeared all right; and that it was "crowned" and properly filled.

For the defendant it appeared that Gist had been a drain layer for fifteen years prior to 1886; that he had done a very large amount of work in that period; that on June 24, 1889, he opened School Street, near Byron Court, to lay a sewer drain; that the drain was properly laid, and sewer connections were properly and tightly made; that the portion laid in the street was covered in on June 28, 1889; that the proper way to fill a

trench in the street was to puddle it up to two feet of the street level, and then, ceasing to puddle, to fill with earth and ram it hard to the top a little above the street level; that puddling meant throwing in of earth and pouring thereon a proper amount of water, as the earth went into the trench; that he held a hose-pipe part of the time, part of the time no one held it, and part of the time some workmen held it; that Gist personally supervised the filling of the trench on June 28, himself holding the hose and pouring in a proper amount of water as the earth was put in; that when the filling reached within two feet of the street level, he ceased puddling, as was proper, and then the gravel which was thrown in was rammed down solid to the top, a little, three or four inches or so, above the street level; that the earth so pounded solid was left a little crowning, in the highest part three or four inches above the street level; that the work was done right and was a workmanlike job; that it was completed about three or four o'clock in the afternoon of June 28, 1889; " that the street at the point was then solid and firm for travel when the work was done"; that teams went over the place that afternoon after it was completed, as they did over the rest of the street, without sinking or cutting, and safely; and that the place appeared to be all right.

On cross-examination, Gist testified that he had a permit from the city to open the street; that a police officer took it up; and that, before beginning the excavation, he had given a bond of $1,000 to the city to indemnify it from any claim of damage.

At the close of the evidence, the defendant requested the judge to rule that, on the evidence, the plaintiff could not recover. The judge declined so to rule; and the defendant excepted.

The judge gave full instructions to the jury upon the questions in the case, without exception by the defendant, and among other things instructed the jury as follows: " If you find that the street was actually defective when the accident took place, then you are also to consider whether the city and its officers did notice it, or whether the nature of the defect was such that with due diligence and care they might have noticed it." To the above instruction the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*T. W. Proctor*, for the defendant.

*J. Prentiss*, for the plaintiff.

ALLEN, J. The difficulty in this case arises from the form of the bill of exceptions, in which it is stated that " for the defendant it appeared," amongst other things, that all the details of the work of filling up the trench were properly done ; that " the work was done right, and was a workmanlike job " ; and that " the street at the point was then solid and firm for travel when the work was done," which was about three or four o'clock in the afternoon of the day before the accident. If all this appeared as facts proved and not open to controversy, it is difficult to see any want of reasonable care and diligence on the part of the defendant in omitting to guard against the defect which certainly existed early the next morning. The only way to account for such defect the next morning would be some cause intervening after the completion of the work. But we are inclined to think that the· bill of exceptions is inaccurate in stating that these facts appeared, and that all that was meant is that there was testimony on the part of the defendant tending to prove them. So construing the exceptions, the jury might find that the condition of the street the next morning was sufficient to show that in point of fact the work of filling the trench was badly done ; and, if badly done, that observation of the work while it was going on, or of the place afterwards, would show it to a skilled eye. Although the time which elapsed before the accident was short, we cannot say that by the use of reasonable care and diligence the proper officers of the city would not have known of the defect in time to remedy it. *Stoddard* v. *Winchester*, 157 Mass. 567 ; *S. C.* 154 Mass. 149. *Stanton* v. *Salem*, 145 Mass. 476. *Hanscom* v. *Boston*, 141 Mass. 242.

We are confirmed in the above construction of the bill of exceptions by the statement in the defendant's brief that all the evidence " tended to show " the above facts.

*Exceptions overruled.*