ALBERT A. BRUMMETT *vs.* CITY OF BOSTON.

Suffolk.    March 5, 1901. — May 22, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Way*, Defect in Highway.

In an action under Pub. Sts. c. 52, § 18, against a city for injuries caused by the caving in of a sidewalk on which the plaintiff was walking, it appeared, that the earth beneath the sidewalk might have been undermined by an escape of water from a water pipe of the city, that, three or four days before, complaint had been made to the water department, that water came from the street into the cellar adjoining the sidewalk where the accident occurred, and that employees of the water department examined the cellar and saw the water coming in through the foundation wall of the building then took up the pavement in front of the sidewalk and did some work there, and the flow of water stopped. *Held*, that there was no evidence that the city had reasonable notice of the defect or might have had such notice by the exercise of proper care and diligence, as the appearance of the ground at the point where the water department stopped work might have given no indication that the earth beneath the sidewalk had been washed out.

TORT under Pub. Sts. c. 52, § 18, to recover for personal injuries caused by the caving in of a sidewalk on which the plaintiff was walking on Dudley Street in that part of Boston called Roxbury. Writ dated April 7, 1900.

At the trial in the Superior Court, before *Aiken*, J., the plaintiff introduced evidence tending to show that on December 24, 1899, at 8 P. M., he was walking upon the sidewalk of Dudley Street in the Roxbury district of Boston; that when he reached a point in front of No. 126, close to the curb, the surface of the

sidewalk suddenly sank beneath his weight; that he went into the hole, which was about one and one half feet square, nearly up to his knees, and was thrown forward upon his face and injured.

The plaintiff also introduced evidence tending to show that the place where the accident happened was in the immediate vicinity of the new Dudley Street station of the Boston Elevated Railway Company; that Dudley Street was one of the principal streets in the Roxbury district and was the most travelled of any street in that district; that a short time before the accident a great deal of digging and excavating had been done between the lines of the sidewalk in front of No. 126; that a large hole ten or twelve feet deep had been dug in order to lay the foundation for a post near by supporting the structure of the elevated railroad and in connection with this work some blasting had been done in the sidewalk; that a trolley wire pole had formerly stood near this post and had been taken up a short time before the accident and shifted to its present position on the other side of the place of the accident; that an electric light pole had been placed in the sidewalk in the immediate vicinity of the spot where the plaintiff fell; that it had been taken up within a month before the accident and removed to the other side of the street, and the hole filled in and the earth stamped down; that a hydrant or water meter which had been. placed in the sidewalk within a few feet of the spot where the plaintiff fell had also been taken up and removed, and the hole filled in a short time before the accident. It did not appear who removed the hydrant.

One Nelson, an employee of one McGrath, who occupied the store. and basement of No. 126, testified that he saw the hole in the sidewalk where the plaintiff fell, on the morning after the plaintiff broke through; that three or four days before the day on which plaintiff was injured, the witness discovered water rushing into the cellar of No. 126; that it came through the front foundation wall of the building adjacent to the sidewalk and at a point opposite to the spot where the plaintiff broke through; that it covered the cellar floor to a depth of from one to two inches, and that he at once notified the agent of the owner of the building that the cellar was flooded with water which was com-

ing through the front wall of the building.    One Macy, the jan-
itor of the building, testified that immediately upon receipt of
this notice he notified the water department of the city of Boston
that water was coming into the cellar of No. 126.    Macy and
Nelson both testified that employees of the water department of
the city of Boston came to the building on the day when these
notices were sent, and entered the cellar and made an examina-
tion and saw the water coming in through the front wall; that
these men wore badges of the water department of the city of
Boston.    They also testified that nothing was done by these
men, or by any one else, inside of the building, in order to keep
the water out, but that on the day following the day when the
above notices were given, the employees of the water depart-
ment took up the pavement and performed some work in the
street, in front of the place where the plaintiff fell.    The patch
of pavement thus taken up and replaced, where the work was
done, was about eight feet in length along the curb and a few
feet wide extending out from the curb.    Nelson testified that
as soon as this work was done in the street the water stopped
coming into the cellar, and that while he remained in the
employ of McGrath, until June, 1900, no more water came into
the cellar.    And this was corroborated by Macy.

Nelson also testified that there had been an aperture between
the curb and the street pavement, about two or three feet long,
in front of the post supporting the elevated structure above re-
ferred to, and that this aperture was filled with cement a few
days before the accident; that the sidewalk was in a very poor
condition; and that he noticed, when sweeping the sidewalk,
that pools of water gathered upon the surface.

The plaintiff testified that the soil under his feet in the hole
was soft and muddy, and that his shoes and his trousers below
the knees were covered with mud.    He also testified that it had
been raining quite hard off and on that day.

The foregoing is in substance all the evidence that appeared
by the report.

The defendant offered no evidence, and at the close of the
plaintiff's case requested the judge to direct a verdict for the
defendant on the ground that it did not appear from the evidence
that the defendant had reasonable notice of the defect, or might

have had notice thereof by the exercise of proper care and diligence on its part.   This was the only question raised.

The judge ruled as requested and ordered the jury to return a verdict for the defendant, and reported the case for the consideration of this court.   If the ruling was correct, judgment was to be entered for the defendant upon the verdict.   If not, the verdict was to be set aside and a new trial ordered.

*J. J. McCarthy*, for the plaintiff..

*P. Nichols*, for the defendant.

HOLMES, C. J.   This is an action for personal injuries caused by the sudden falling in of a sidewalk upon which the plaintiff was walking.   The question is whether there was any evidence of notice to the city of its dangerous condition.   At the trial the judge directed a verdict for the defendant, and reported the case.

There had been some digging and blasting near by for a post for the Elevated Railway.   A trolley wire pole had been moved to near the place.   An electric light pole close to the spot had been taken up a month before and the hole filled in, and the same thing had been done later with a hydrant.   But whether the soil was disturbed at the precise spot did not appear.   Who did the work was not proved except by inference, nor did it appear that the work was done improperly, or, if it was, that the city had notice of the fact.   In *Bingham* v. *Boston*, 161 Mass. 3, there was such notice.   It had been raining hard, and if the rain coupled with the recent disturbances of the soil caused the accident, the city cannot be held.

It would seem more probable that the immediate and active cause was the escape of water, presumably from a water pipe of the city, which was noticed and complained of three or four days before.   The water came from the street into the cellar adjoining the sidewalk where the plaintiff fell and, very likely, undermined it.   Upon receipt of the notice men from the water department took up the pavement in front of the sidewalk and did some work.   The flow of the water then stopped.   The strongest argument for the plaintiff is that the city, having notice through its water department of the course of the water, fairly might have been found negligent in not discovering the supposed effect of the water between the place it repaired and the building.

But apart from other questions, *Stoddard* v. *Winchester*, 157 Mass. 567, 574, this is pure conjecture. If it were permissible to guess, it is as likely that the earth looked safe at the point where the water department stopped work as that the person in charge went away leaving a manifestly unsafe place. There is an even chance that the water would not have done any harm but for negligent filling done by a third person and unknown to the city. Even assuming that the probabilities are that the escape of water from a pipe had undermined the sidewalk, the rest of the case is too uncertain to warrant a finding that the defendant was in fault.

*Judgment for defendant.*