CATHERINE M. MAHONEY *vs.* CITY OF WORCESTER.

Worcester.    September 26, 1928. — November 26, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Way*, Public: defect. *Snow and Ice.*

At the trial of an action against a city under G. L. c. 84, § 15, there was evidence that the plaintiff "tripped, stumbled . . . and fell" on a sidewalk where ice had formed on a frozen and lumpy accumulation of loam, gravel and cinders which extended from an abutment at the foot of an embankment at a railroad bridge crossing a public way to and upon the sidewalk; and that such an accumulation, frozen with ice upon it, had continued for about a month before the plaintiff fell. *Held*, that

(1) A finding was warranted that there was at the place of the accident an accumulation of loam, cinders and gravel which, even had it not been cemented together by snow and ice, rendered the sidewalk not reasonably safe for travel;

(2) A finding was warranted that by the exercise of proper care and diligence the defendant might have had reasonable notice of the defect;

(3) The mere fact, that the particular cinders forming part of the accumulation at the time of the accident were recent additions, would not necessarily render the defect a new one, if it was also the fact that there was continually some such accumulation at that place for a considerable period before the plaintiff fell;

(4) The evidence warranted a verdict for the plaintiff.

TORT under G. L. c. 84, § 15. Writ dated October 23, 1925.

In the Superior Court, the action was tried before *Greenhalge*, J., who ordered a verdict for the defendant and reported the action for determination by this court. Ma-

terial evidence and the terms of the report are stated in the opinion.

*F. P. Ryan & S. Perman,* for the plaintiff, submitted a brief.

*W. C. Mellish,* City Solicitor, for the defendant.

WAIT, J.   The plaintiff was injured on February 12, 1924, by falling on the sidewalk of Hammond Street in Worcester at the abutment of a bridge carrying the tracks of a steam railroad over the street.   She testified that she observed ice on the sidewalk and walked closer to the abutment to get away from the ice, and, as she approached, she saw "a black project of loam, gravel and cinders which extended out from the abutment to the sidewalk under the railroad bridge about eighteen inches and projected about six inches in height."   She "tripped, stumbled on it, and fell. . . . There was some project sticking up, and I tumbled my foot, and tripped, and fell. . . . There was ice on the sidewalk, on that black loam, icy."   Another witness testified to the presence of "about five or six inches of cinders, dirt, snow and ice which extended to about the middle of the sidewalk" near the bridge; and that the plaintiff was lying on the sidewalk near the bridge "almost on top of the black spot."   She told him she slipped on the ice.   He testified also that "on the sidewalk there was snow on top of the ice and that where the plaintiff fell it was 'kind of lumpy'; that some of the 'black stuff' was frozen solid and some was not; that on top of the snow and ice he noticed cinders, but didn't know how deep a layer it was." A witness who had lived on the street since 1922, testified that he walked down the street twice and sometimes three times a day; that in February, 1924, on the westerly sidewalk "there is probably about three or four inches of ice the whole winter through both January and February, and in that ice as there is every year, there are large clinkers, some as large as your fist, others half that size and all the way down, frozen sometimes partly in the ice, one end protruding"; and further, "that he did not know how long any particular clinkers had been there, that he was not prepared to say any particular clinker in any particular

day was there the day before or whether it came down that same day or not; that the whole sidewalk was covered with ice."

The sidewalk was granolithic. There was no evidence of defect or want of repair apart from such accumulation of cinders, loam, gravel, snow and ice, if any, as may have been upon it. Other evidence offered by the plaintiff justified an inference that the railroad embankment was covered with cinders which might fall or wash down upon the sidewalk, and be held by the abutments of the bridge near or upon the sidewalk.

At the close of the plaintiff's case, the judge directed a verdict for the defendant and reported the case. If the verdict was directed rightly, it is to stand; otherwise a verdict in damages for $1,000 is to be entered for the plaintiff.

A municipality is not liable "for an injury or damage sustained upon a public way by reason of snow or ice thereon, if the place at which the injury or damage was sustained was at the time of the accident otherwise reasonably safe and convenient for travelers." G. L. c. 84, § 17.

It was held in *Newton* v. *Worcester*, 174 Mass. 181, that the statute is to be interpreted to mean: "that wherever ice or snow is the sole proximate cause of an accident, there shall be no liability, but where at the time of the accident there is any other defect to which as a proximate cause the accident is in part attributable, there may be a liability notwithstanding the fact that it may also be attributable in part to ice or snow." That case has frequently been cited and followed. See *Naze* v. *Hudson*, 250 Mass. 368. Upon the foregoing evidence a jury would be justified in finding that there was at the place of the accident an accumulation of loam, cinders and gravel which, even had it not been cemented together by snow and ice, rendered the sidewalk not reasonably safe for travel. The fact that ice and snow also were present, and perhaps contributed to make the accumulation more dangerous, does not free the city from liability; as it might be found that the place at the time of the accident was not "otherwise reasonably safe and convenient for travelers." *Bailey* v. *Cambridge*, 174 Mass. 188. There is

nothing to the contrary in *Boudreau* v. *Springfield,* 257 Mass. 105, or the cases there cited.

The testimony would support an inference that the condition had existed throughout January and February, and, thus, would justify a finding that the defendant might by the exercise of proper care and diligence have had reasonable notice of the defect. If it were the fact that the particular cinders forming part of the accumulation at the time of the accident were recent additions, this would not necessarily render the defect a new one, if it were also the fact that some accumulation at that place was an ever present condition on the sidewalk. If, for a considerable time, a stream of water constantly deposited upon a way stones which, while present, rendered it defective, but which were speedily carried away and as speedily replaced by others, we think the person responsible for the condition could be found to have notice of a defect although he might never have knowledge of the particular accumulation present at a specified moment. There would not be merely a liability to become defective, as in *Monies* v. *Lynn,* 121 Mass. 442; 124 Mass. 165; *Stoddard* v. *Winchester,* 154 Mass. 149; *Taylor* v. *Sterling,* 250 Mass. 123; but an actual existing defect. *Fleming* v. *Springfield,* 154 Mass. 520. *Stoddard* v. *Winchester,* 157 Mass. 567. It can make no legal difference that gravity and the wind rather than flowing water produce the result.

The case is close, but we think there was evidence for the jury both upon the existence and notice of the existence of a defect.

It follows that, pursuant to the agreement in the report, our order must be: Directed verdict set aside; verdict for plaintiff in $1,000 to enter.

*So ordered.*