THOMAS W. CHALMERS *vs.* WHITMORE MANUFACTURING
COMPANY.

Hampden.    September 26, 1895. — November 26, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Evidence — Expert Witness — Exceptions.*

A question to an expert witness at the trial of an action, which assumes as an
absolute fact, and not as a hypothesis, a matter which is in dispute, is properly
excluded.

In an action for personal injuries occasioned to the plaintiff, while in the defend-
ant's employ, by the breaking of a bolt in a machine upon which he was at
work, an expert witness may give his opinion in regard to the relative fitness of
steel and iron or other metals for use in the construction of a bolt for such a
machine, but he cannot give an opinion which includes his views upon any con-
flicting evidence.

An exception to the exclusion of evidence, offered to contradict the testimony of
another witness, will not be sustained if the excepting party fails to show that
the excluded evidence, if received, might properly have been considered upon
the issue.

TORT, for personal injuries occasioned to the plaintiff, while
in the defendant's employ, by the breaking of a bolt in a
machine upon which he was at work in the defendant's mill at
Holyoke.    At the trial in the Superior Court, before *Dewey*, J.,
the jury returned a verdict for the defendant; and the plaintiff
alleged exceptions to ˙the exclusion of certain evidence, the
nature of which appears in the opinion.

*J. B. Carroll & W. H. McClintock,* for the plaintiff.

*W. H. Brooks & W. Hamilton,* for the defendant.

KNOWLTON, J.    The plaintiff's counsel asked an expert wit-
ness this question: "Now, suppose a bolt occupying a position
like this bolt, in which there is this constant sidewise jar on
it, — I will ask you whether or not a steel bolt is a proper bolt
for the place?"    The question was ruled out on the defendant's
objection, and the plaintiff excepted.    The question assumed as
an absolute fact in the case, and not as a hypothesis, that there
was a constant sidewise jar on the bolt, and then asked the
witness to answer the precise question which was the issue
before the jury.    Whether there was such a jar was in dispute.
The weight of evidence tended to show that the greatest strain

that could be put upon the bolt by the ordinary working of the machine was about twenty-two pounds, and that there was no jar. We think the question was properly excluded. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169. *Poole* v. *Dean*, 152 Mass. 589. *Stoddard* v. *Winchester*, 157 Mass. 567, 575. *Twomey* v. *Swift*, 163 Mass. 273.

The witness was then asked, " Is steel a proper material to use under the circumstances attending the use of this bolt in a machine? " The subject of the inquiry was pertinent to the issue, and the witness might properly give his opinion in regard to the relative fitness of steel and iron or other metals for use in the construction of a bolt for a place like this. But he could not give an opinion which included his views upon any conflicting evidence. He was testifying as a person possessed of special knowledge derived from study and experience. To make his testimony valuable and entirely intelligible, it was necessary that he should state to the jury upon what actual or hypothetical facts he was giving an opinion, and what his opinion was upon the facts supposed. The question called for the consideration of two different subjects: first, the circumstances attending the use of the bolt; and, secondly, the fitness of steel for use under different conditions. The evidence tends to show that there was a difference of opinion among the witnesses in regard to these circumstances in reference to the qualities of metals in different combinations which would best meet the requirements of the use, and the judge in his discretion might well refuse to permit the witness to answer a question which neither required him to state what his opinion was in regard to the requirements of the place where the bolt was, nor asked what he thought of the relative fitness of steel and iron to meet the different kinds of requirements. No question addressed to the opinion of the witness in any particular matter of science or expert knowledge was excluded. In determining whether a question is so framed as to bring to the aid of the jury matters purely of expert opinion in such form as to be intelligible, something must be left to the presiding judge, who often has before him facts which cannot well be presented in writing to an appellate tribunal, and whose finding upon any doubtful question of fact cannot be revised by this court. Moreover, in replying

to the question, "Have you had any observation of the comparative strength and utility of these bolts, both steel and iron, of this bolt, the bolt at this place, both steel and iron," the witness afterwards testified fully, and gave the plaintiff substantially all the advantage which he would have got from a negative answer to this question, or from an answer to the first question. This exception must be overruled.

The only other exception is to the refusal of the judge to permit the plaintiff to ask this question, "Do you know whether or not any cast iron bolt came with those two last machines, — I mean wrought iron?" The machine on which the plaintiff was working was called the Cranston Under-cut Machine. The evidence tended to show that its weight was 6,300 pounds; that there were from seventy-five to one hundred bolts in it; that about ninety per cent of the paper manufacturers in this country use these machines; and that of the different sizes there were about one hundred in use by the paper manufacturers in the city of Holyoke. Charles Cranston, the inventor of the machine, was called by the defendant as a witness. He testified that he was the manufacturer of these machines; that they first came into use about 1866, and had been much improved since; that six or seven years ago he sold the defendant the machine on which the plaintiff was working; that it was of the most improved kind; that the defendant had four of them in all; and that all the bolts in these various machines which he had built and sent out for the last ten years have been of machinery steel, the same as this bolt that broke. He testified at length as an expert, to the effect that he believed this kind of bolt to be better and stronger than any other. In cross-examination he testified that before the accident he never heard of a bolt breaking at this place; that he sent a new machine to the defendant, but could not give the date, and could not tell whether it was before or after the accident; that he did not know whether he sent up an iron bolt for that or not, but did not believe he did; that he did not recollect every bolt with sixty or eighty men at work, and could not see everything that went out of the shop; that he did not think he sent it full size (referring to the shape of the bolt that broke, which is cut down in one part from its largest size to extend the shoulder); that

he had not made a bolt of iron at his shop for twelve years; that he did not make them of full size at his shop; and that he was not supposed to see every bolt that went into a machine, and that it might have been of full size.   The defendant's treasurer and manager testified that the defendant had had two large machines come within two or three years; that he had not examined them particularly with reference to this bolt, but that this bolt was not supposed to be of full size without any shoulder.   The plaintiff, in reply, proposed to put the question above quoted, and stated his purpose to contradict the witness Cranston by the answer, and " offered to show that a wrought iron bolt had been sent, and they were full size from end to end."

The sale of the last machine by Cranston to the defendant was introduced in cross-examination, and was immaterial to the issue.   Whether all of its bolts were of steel or some of them were of iron was also immaterial.   The plaintiff was therefore so far bound by the answers made by Cranston in cross-examination in regard to this matter that he could not introduce testimony from other witnesses to show that they were false for the purpose of contradicting this part of his testimony.   *Eames* v. *Whittaker*, 123 Mass. 342.   If it were a fact that either before or after the accident the defendant purchased another machine which had an iron bolt in the place where this one broke, that would not be competent on the main issue to show negligence.   *Menard* v. *Boston & Maine Railroad*, 150 Mass. 386.   *Downey* v. *Sawyer*, 157 Mass. 418, 421.   It is contended that, because the witness Cranston testified in direct examination that all these machines which were in general use all over the country had been made at his shop, and that they were all made with bolts of steel like this which broke, and that he had not made a bolt of iron for one of these machines for many years, and that he thought steel the best material for such bolts, it was competent to introduce the answer to this question to contradict him in the substance of his testimony.   To do this the plaintiff called his own brother, who had already given important testimony, in which he had been contradicted by other witnesses, and who was a workman in a paper mill, and who, so far as appeared, had no knowledge of iron except what he had derived from tending one of these machines, and asked him the question which was excluded.   An expert had already testified that in his opinion " it would be

impossible for any one to tell by mere inspection, without a test, the difference between a finished bolt of machinery steel of good quality and one of wrought iron which is free from seams." The witness was only asked whether any wrought iron bolt came with the two last machines. The offer was merely to show that a wrought iron bolt of full size from end to end had been sent. When an important case has been tried at great length, and a verdict has been rendered with all presumptions and indications in favor of its correctness, an excepting party who asks to have it set aside on account of alleged error in the exclusion of testimony ought to be held very strictly to show that the evidence, if received, might properly have been considered upon the issue. It cannot be presumed in his favor that the evidence would have gone beyond the strict terms of his offer. If the plaintiff's brother had testified that among the seventy-five to one hundred bolts in the machine when it came to the defendant's mill there was one of wrought iron, of full size from end to end, could the jury properly have treated it as a contradiction of the substance of Cranston's testimony in regard to his method of manufacturing these machines, of which there were one hundred then in use in Holyoke, or in regard to his opinion that steel was the best material for such bolts? Cranston testified that he could not have personal knowledge of what went with every machine, and that there might have been such a bolt among the others. There was no offer to show that the new machine as set up and used had an iron bolt at the point in question, or that Cranston knew that an iron bolt was sent with the machine. If the testimony had been received without more, would not the jury have been forced to believe, if they believed the witness, that the presence of one such bolt was from some cause which had no relation to the general facts to which Cranston testified? If the judge had received it, we should have been disinclined, upon the printed evidence, to hold its admission to be an error which would affect the verdict. On the other hand, we think the judge might well rule, on the evidence before him, that it had no such relation to the evidence relied on by the defendant as to entitle the plaintiff to have it considered as affecting the value of Cranston's testimony. We are of opinion that the plaintiff has no legal ground of objection to the ruling.

*Exceptions overruled.*