## FLORENCE MCCARTHY vs. BOSTON DUCK COMPANY.

Hampden.   September 26, 1895. — January 4, 1896.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Defective Appliance — Evidence — Expert.*

A question which calls for the opinion of a witness upon the effect of evidence in establishing facts which do not depend upon his knowledge as an expert is properly excluded.

If the subject to which a question related that was put to a witness and excluded seems to have been so far explained in the evidence of the witness subsequently admitted that no injury resulted from the exclusion of the question, an exception to such exclusion will not be sustained.

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by being struck by a belt on a machine which broke at the point where it was fastened together by an iron plate, if the principal issue is whether the defendant had used reasonable care in furnishing a proper belt, it is within the discretion of the judge to exclude evidence offered to show that there were other kinds of fastening which could have been used by the defendant to better advantage, but not amounting to an offer to show that such other fastenings were in common use as fastenings for belts.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ.

At the trial in the Superior Court, before *Dewey*, J., it appeared that the plaintiff, when injured, was at work in the dyeroom of the defendant's mill mixing some dye stuffs in a tub; that the tub stood near a certain machine, and the plaintiff, while at work, stood in a stooping posture directly underneath the belt which ran from the fixed pulley on the machine to the pulley on the shaft overhead; that the belt was fastened by a Talcott plate, which was a piece of iron about three and one quarter inches wide with two double rows of teeth projecting from the under side, and these teeth were driven through the belt, one row through each end, and then clinched on the under side; and that the belt broke at the point where it was fastened together and, falling, struck the plaintiff, causing the injuries complained of.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions to the exclusion of evidence, the nature of which appears in the opinion.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

*W. H. Brooks & W. Hamilton*, for the defendant.

FIELD, C. J. We infer that the first question put to the witness Webber was excluded by the court on account of the form of it,* because, when counsel stated what he offered to show by the witness, the court said, "I have not ruled on that." The usual way of asking for an opinion of an expert is to state hypothetically the facts upon which the opinion is desired. *Woodbury* v. *Obear*, 7 Gray, 467, 471. It is said, however, that this is not an exclusive formula. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 172.

It is important that the form of the question should be such as not to require or permit the witness to draw conclusions of fact from the evidence in the case, and to give an opinion based

---

* This question was as follows : "You saw this machine, and you heard the testimony here to-day of Mr. O'Connor about the way this belt was fastened, with this Talcott plate. What do you say, taking into account all the circumstances, its size, the shipper, the way it ran, the size of the upper pulley, and the way it was fastened, what do you say whether or not that was a proper fastening?"

wholly or in part upon such conclusions. A witness ought never to be permitted to give an opinion upon the effect of evidence in establishing facts which do not depend upon his knowledge as an expert. Where the evidence is conflicting or relates to many details, or where inferences of fact must be drawn from the evidence, in order to be reasonably certain of the grounds on which an opinion is based, it is usually necessary that the facts should be stated hypothetically. It is impossible to lay down an absolute rule for all cases, and some discretion must undoubtedly be left to the justice presiding at the trial. In the present case we think that the form of the question was such that it was properly excluded. It appears that the witness was afterwards permitted to testify upon the subject matter of the offer of proof.

The purpose of the second question to the same witness which was excluded seems to have been to show that there would be a greater strain on the belt if it passed over a pulley ten or twelve inches in diameter than if it passed over a pulley of larger diameter.* If the witness was permitted to explain the nature and cause of the strain on a belt fastened together as this was, in passing over a pulley, it would be a natural inference that a small pulley would tend to bend the belt more than a large one, and as the fastening was a stiff piece of iron, that this would tend to produce a greater strain on the belt at the point where the two ends were fastened together than would be produced by a larger pulley. There is no evidence that the pulleys used were not suitable and proper, and the witness in his cross-examination explained the nature and cause of the strain on the belt, and among other things said, " The pulleys are entirely proper pulleys for such a belt; they are in ordinary use for such a belt; but it depends on the fastening; the pulleys were of the proper size to get that amount of speed; it makes it a very hard strain on such a belt, that is all, and such a fastening." If the plaintiff should have been permitted to show the kind and amount of the strain resulting from the size of the pulley, as bearing upon the question whether the belt was

---

* This question was as follows : " Now then, what effect has the belt fastened in that way, with a Talcott plate, passing over a pulley ten or twelve inches in diameter, what effect does that have ? "

168      . McCARTHY *v.* BOSTON DUCK CO.      [165

properly fastened for the uses to which it was put, it seems to us that the subject was so far explained in the evidence admitted that there is no· sufficient ground for sustaining the exception to the exclusion of this question.

The principal issue in the case was whether the defendant had used reasonable care in furnishing a proper belt, and one of the alleged defects in the belt was the manner in which the two ends were fastened together, considered with reference to the way in which it was used. As bearing on that issue, it seems to be competent in such a case as this to prove that the fastening used was in common and ordinary use, and also to prove what other kinds of fastening were commonly used elsewhere and might have been used here. *Myers* v. *Hudson Iron Co.* 150 Mass. 125, 138. See *Goodnow* v. *Walpole Emery Mills,* 146 Mass. 261; *Carey* v. *Boston & Maine Railroad,* 158 Mass. 228; *Hale* v. *Cheney,* 159 Mass. 268; *Cassady* v. *Boston & Albany Railroad,* 164 Mass. 168.

The court permitted the defendant to ask one of its witnesses the following question: "Whether or not that [the Talcott plate] is in common and ordinary use in the fastening of the ends of a belt?" and the witness, against the plaintiff's objection, was permitted to answer, "I have seen that in use in about every factory that I have been to." The plaintiff complains that he was not permitted to ask one of his witnesses, when putting in his evidence, the following question: "Now, Mr. Webber, are there other kinds of fastenings for belts besides the Talcott plates?" The exceptions recite as follows: "The plaintiff offered to show [by this witness] that there was nothing about the conditions in this room that would prevent any other kind of fastening, and that with other fastenings there would be a warning, there would be no sudden snapping. The plaintiff offered to show by this witness that there were other appliances that could be used for fastening this kind of belt, and that there was nothing in the conditions in that room that would prevent those fastenings being applied, and that those fastenings would give warning of their breaking; they would not break suddenly, — would n't break as it would with a Talcott plate." The plaintiff's offer did not amount to an offer to show that such other fastenings were in common use as fastenings for

rubber belts.    The inquiry into the appliances that might have been used, and the advantages and disadvantages of using the different appliances, is in its nature somewhat remote from the issue to be determined, and a good deal must be left to the discretion of the presiding justice in determining how far it should be pursued.    *Veginan* v. *Morse,* 160 Mass. 143.

In view of the nature of the evidence offered, we feel justified in construing the exceptions of the plaintiff with some strictness. Of course it does not follow that, if other appliances were in common use and were safer, it was necessarily the duty of the defendant to employ them; but, construing the plaintiff's offer of proof strictly, it was an offer to show what could have been done but not what was commonly done, and we think it was within the discretion of the presiding justice to exclude the evidence on that ground.    See *Iron-Ship Building Works* v. *Nuttall,* 119 Penn. St. 149; *Lehigh & Wilkes-Barre Coal Co.* v. *Hayes,* 128 Penn. St. 294.                    *Exceptions overruled.*