## COMMONWEALTH *vs.* RAY C. JOHNSON.

Suffolk. May 19, 1905. — June 20, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Murder. Insanity. Practice, Criminal. Evidence*, Opinion: experts.

In a trial for murder, where the defence is insanity, the order in which evidence of insanity shall be introduced is within the discretion of the court.

In a trial for murder, where the defence is insanity, the restriction of the cross-examination of government experts upon the relative value and reputation of

medical authorities who have written upon insanity is within the discretion of the court, and so is the exclusion of a hypothetical question on a ground of form.

In a trial for murder, where the defence is insanity, if the physical and mental history of the defendant and his family comes solely from the defendant's statements, letters and admissions or from his witnesses, and is accepted by the government as true, an expert for the government, who has made examinations of the defendant, may be asked whether from all his examinations and investigations, and from what he has heard in court, he has formed any opinion as to the mental condition of the defendant on the day of the alleged murder, and, on answering this question in the affirmative, and giving an opinion that the defendant was sane at that time, he can be asked further what is his opinion of the defendant's sanity at the time the question is put.

Where in a criminal case the instructions requested by the defendant have been given in substance so far as applicable, no exception lies to the refusal of the judge to give them in the language of the requests.

In a trial for murder in the second degree, where the defence was insanity, the judge in charging the jury, after reading to them a passage from the opinion in *Commonwealth* v. *Rogers,* 7 Met. 500, 501, further instructed the jury that a complete purpose or design to kill must be shown, and that the burden of proof was upon the Commonwealth to satisfy them beyond a reasonable doubt that the defendant was legally responsible at the time of the killing, or in other words was sane. *Held,* that this was a correct statement of the law.

In a trial for murder, where the defence is insanity, it is not necessary that experts testifying for the government as to the mental condition of the defendant should state the grounds or reasons for their opinions, the defendant having the opportunity to ask for the grounds of their opinions on cross-examination.

INDICTMENT, found and returned in the Superior Court for the County of Suffolk on February 6, 1904, for the murder of one Sarah A. Peters on January 5, 1904, by shooting her with a pistol.

Before the trial the district attorney entered a *nolle prosequi* as to so much of the indictment as charged murder in the first degree, and the defendant was tried before *Bond,* J. for murder in the second degree. The jury returned a verdict of guilty; and the defendant alleged exceptions, raising the questions stated by the court.

*J. J. Walsh & J. F. Lynch,* for the defendant.

*M. J. Sughrue,* First Assistant District Attorney, for the Commonwealth.

BRALEY, J. Of the numerous exceptions taken, only those relating to the general conduct of the trial, the evidence of the medical experts called by the government, the method of their examination, the refusal to give certain requests for rulings asked by the defendant, and to portions of the charge

have been argued. We consider them in the order of their presentation.

There was ample evidence of the homicide, which indeed was not denied by the defendant, and the only defence offered was his insanity at the time.

Upon this issue it was competent for him to show that his ancestors or relatives had been insane, but the order in which this evidence should be introduced was wholly within the discretion of the court.

The ruling made at first, that before its introduction there must be some preliminary proof of insanity when he committed the act, later was modified, and the evidence admitted without this restriction.

Complaint, however, is made that before making this modification the presiding judge, in the absence of the jury, irregularly heard counsel, and took the opinion of medical experts for the purpose of ruling upon the question.

But the defendant was not prejudiced by the temporary exclusion of the evidence, or by the preliminary hearing, for it is common practice in the course of trials to permit the jury to retire while questions of law are discussed for the purpose of formulating final rulings.

The prisoner and his counsel were present throughout the discussion, and as the issue of his sanity finally was submitted to the jury he suffered no injury, and the course adopted must be held to have been discretionary. *Nash* v. *Hunt*, 116 Mass. 237, 253. *Commonwealth* v. *Piper*, 120 Mass. 185, 186.

Before taking up the general subject of the form of question which was asked of the government experts, it should be said that the refusal to permit their cross-examination upon the relative value and reputation of medical authorities who had written upon the general subject of insanity, as well as the exclusion of certain hypothetical questions addressed to them, are governed by the same rule. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 139. *Jennings* v. *Rooney*, 183 Mass. 577, 579.

To each of these witnesses the government was allowed to put these and other similar questions, subject to the defendant's objection and exception, " Have you formed any opinion from all your examinations and investigation, and what you have heard

in court, as to the mental condition of the defendant on the fifth of January, 1904?" " From all you have observed of this man and from all that you have heard in court have you formed an opinion of what his mental condition was on the fifth of January, 1904?"

The physical and mental history of his family and himself, upon which they were founded, came solely from the defendant's statements, letters and admissions or from his witnesses, and was accepted as true, while it further appears that each of the experts also had seen and examined him.

Upon answering in the affirmative they severally gave an opinion that he was sane, and then made a similar reply to the further question, " What is your opinion as to his sanity now?"

If a question of this character resting on the assumption of the truth of the evidence of a plaintiff alone is admissible, which was held in *Twombly* v. *Leach*, 11 Cush. 397, 402, 405, there is in principle no substantial reason why a medical expert who has not made an examination of the patient whose physical or mental condition he is called upon to determine, but has heard it described by witnesses at the trial, should not answer similar questions without their being hypothetically framed. *Stoddard* v. *Winchester*, 157 Mass. 567, 575.     *McCarthy* v. *Boston Duck Co.* 165 Mass. 165, 166.

By this form of examination no injustice is done, for whatever reasons even to the smallest details that an expert may have for his opinion can be brought out fully by cross-examination.

But here as in other matters relating to the general management of trials much must be left to the judgment of the trial court, which will not be revised unless the course pursued plainly was prejudicial to the legal rights of the defendant, which does not appear in the present case. *Commonwealth* v. *Piper, ubi supra.*

Thus the length of hypothetical questions, or whether the facts assumed are within the hypothesis on which it is claimed the case rests, or whether a witness is professionally qualified, or is sufficiently acquainted with the history of the case to give an opinion, are as well within the reasonable exercise of this power as the order of presentation of evidence, or the length

of time permitted to counsel for argument if beyond the limit fixed by a general rule, or the scope of cross-examination of witnesses. *Commonwealth* v. *Piper, ubi supra. Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463, 465. *Chalmers* v. *Whitmore Manuf. Co.* 164 Mass. 532, 533. *Forsyth* v. *Doolittle,* 120 U. S. 73.

It further must be held that as each of these experts also testified from personal observation of the defendant, a direct question calling for their opinion formed on such an examination would have been competent.

As the case stood their opinions rested upon the assumption of the truth of the uncontradicted testimony so far as material which each had heard, considered in the light of the knowledge of his intellectual condition previously obtained from actual contact.

The number of witnesses does not alter the practical operation of the rule if there was no conflict of evidence, or the facts so complicated that there may be danger of the jury being confused and misled.

Accordingly this form of interrogation was fully recognized and approved in *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 172, which has been followed in *Hand* v. *Brookline,* 126 Mass. 324 ; *Stoddard* v. *Winchester, ubi supra ; Oliver* v. *North End Street Railway,* 170 Mass. 222 ; *Rafferty* v. *Nawn,* 182 Mass. 503. It apparently was used with approval and without objection in *Commonwealth* v. *Pomeroy,* 117 Mass. 143.   But if the evidence is of a complicated and contradictory character, and such that it would be likely to be understood differently by intelligent jurors, the question should call for the facts on which the opinion is founded.

In this connection a minor exception relating to the admission of evidence descriptive of the attitude and appearance of the defendant when under scrutiny by one of the experts may be noticed.   This was entirely competent either as being in the nature of a conversation with him, or, as furnishing a reason for the opinion of the witness.

We now pass to the exceptions relating to the instructions given to the jury, and the refusal to give the defendant's tenth, eleventh, twelfth, sixteenth and nineteenth requests.

If so far as applicable the rulings requested were given, though in other language, their refusal in the form presented affords no ground of exception. *Commonwealth* v. *Costley*, 118 Mass. 1, 25. *Graham* v. *Middleby*, 185 Mass. 349. *Commonwealth* v. *Adams*, 186 Mass. 101, 107.

The tenth and eleventh requests related solely to his mental capacity at the time, while the twelfth, sixteenth and nineteenth asked for instructions that if mentally irresponsible premeditation of the homicide, even if united with the passions of hatred, malice or revenge, were not incompatible with an unsound mind, and that if the jury had a reasonable doubt of his sanity, he was entitled to an acquittal, though possessed at the time of sufficient reason to enable him to distinguish between moral right and wrong.

An examination of the entire charge in connection with these requests, and the urgent argument of the defendant, fails to reveal any error of law.

In presenting to the jury the law governing the case it was not only within the province, but it became the duty of the judge to call to the attention of the jury the evidence so far as it might be illustrative of the legal principles involved, and an aid to the proper understanding of the issues presented for their decision. In so doing the presiding judge is not required to select particular facts or aspects of the evidence for comment that are favorable to either party, but he may state generally his recollection of the testimony. *Littlefield* v. *Huntress*, 106 Mass. 121. *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485, 488.

So also the illustrations used to explain the necessity and value of opinion evidence were well within this practice, and unexceptionable. *Melledge* v. *Boston Iron Co.* 5 Cush. 158. *Burns* v. *Donoghue*, 185 Mass. 71, 73.

Their attention very properly was pointedly called to what the defendant had said after committing the crime, as well as his previous mental condition, with the object of directing them to the sole issue whether he was responsible for the killing of the deceased.

They previously had been told that for this act he would not be accountable " if at the time when the act was committed he was prevented by defective mental power, or by disease affecting

his mind, from knowing the nature and quality of his act, or from knowing that the act is wrong, was in violation of law, and that he would be punished, or from controlling his conduct unless the power of control has been superinduced by his own conduct."

The law relating to his responsibility was again fully stated as follows: "In order to constitute a crime, a person must have intelligence and capacity enough to have a criminal intent and purpose; and if his reason and mental powers are either so deficient that he has no will, no conscience or controlling mental power, or if, through the overwhelming violence of mental disease, his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts." *Commonwealth* v. *Rogers,* 7 Met. 500, 501.

When with this instruction the further statements are found, that a complete purpose or design to kill must be shown, and that the burden of proof was upon the Commonwealth to satisfy them beyond a reasonable doubt that he was legally responsible at the time, or in other words was sane, not only had the defendant's requests so far as proper been given in substance, but the law also had been fully and correctly stated. *Commonwealth* v. *Heath,* 11 Gray, 303. *Davis* v. *United States,* 160 U. S. 469, 481–483; *S. C.* 165 U. S. 373, 378. See charge of Chief Justice Gray in *Commonwealth* v. *Pomeroy,* for murder, reported in the appendix to Wharton on Homicide, (2d ed.) 753. Also charge of Mr. Justice Charles Allen in *Goodwin's case,* for murder, Essex, 1885, in the official report published by the attorney general.

Nor was this general instruction qualified or affected by an expression afterwards used, which was made the subject of an exception, that it must be "proved, to the satisfaction of the jury, that the mind of the accused was in a diseased and unsound state." Neither does it afford reasonable ground for the argument advanced that the judge thus erroneously placed upon the defendant the burden of proving by a preponderance of the evidence that he was mentally irresponsible.

The exception to the omission of any instruction that experts when testifying as witnesses must state the grounds or reasons for their opinions is equally untenable. If the defendant desired

their reasons his counsel were not precluded from asking for them on cross-examination. There is no general rule of practice which makes it imperative on the party calling such a witness that after he has been duly qualified, and given an opinion, his reasons therefor also must be stated, though it is frequently done. *Sexton* v. *North Bridgewater*, 116 Mass. 200.

The statement made in commenting upon the form of the question addressed to one of the defendant's medical witnesses was not for the purpose of saying that a tendency to insanity was unimportant as a symptom, but the reference evidently was to enable the jury clearly to understand the real issue presented. And this was the defendant's accountability for the crime charged, which depended upon his sanity when it was committed. *Dole* v. *Thurlow*, 12 Met. 157.

The defendant further contended that the language used when referring to the opinions of the government experts was partial, and especially is open to the objection of being a charge upon the facts, prohibited by statute. R. L. c. 173, § 80.*

But this instruction, carefully guarded, left the credibility and weight of their evidence to the jury, who must have understood they were free to make such application of it as they chose. *Commonwealth* v. *Larrabee*, 99 Mass. 413, 416. *McKean* v. *Salem*, 148 Mass. 109, 114.

*Exceptions overruled.*

---

* The passage in the judge's charge here referred to, which was quoted in the defendant's brief, was as follows: " Now, it is for you to say what weight their opinion is entitled to, the weight of their opinions in view of their honesty, in view of their intelligence, in view of their willingness to testify fairly with reference to the matter, without bias or prejudice as to either side, whether the experience that they have had is sufficient to give them some knowledge which you can rely upon. And you will say from their testimony, understanding what they had seen of the defendant, and what they have heard from the testimony here, with reference to him, whether their opinion as it was given to you can be relied upon by you when they say there was no evidence, has not been any evidence here, that this man was insane, had no disease of the mind so that he was insane."