MARGARET E. CONNOR *vs.* FRANCIS M. O'DONNELL.
JOSEPH J. CONNOR *vs.* SAME.

Middlesex. February 4, 1918. — April 18, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Physicians and Surgeons. Negligence,* Of physician. *Evidence,* Opinion: experts.

In an action by a married woman against a physician for alleged negligent professional treatment of the plaintiff after she had been delivered of a child, it was *held* that there was evidence to support a specification that one shoulder of the plaintiff was fractured and her other shoulder dislocated by holding her wrists under the direction of the defendant to restrain her while she was having convulsions.

In the same case it also was *held* that there was evidence to support another specification that the defendant was unskilful and negligent in failing to discover the condition of the plaintiff's shoulders as described above and causing her great pain by directing that they should be manipulated.

A medical or other expert cannot be allowed to be asked to give his opinion founded on "the evidence in the case," unless such evidence is admittedly capable of only one interpretation, which here was not the case.

Two ACTIONS OF TORT against a physician, the first by a married woman for alleged negligent professional treatment, and the second by her husband for consequential damages. Writs dated March 12, 1915.

The defendant moved for specifications, and the plaintiff filed specifications, which are described in the opinion.

In the Superior Court the case was tried before *Wait*, J. The evidence is described in the opinion. The question which the judge allowed to be put to Dr. Jefferson, subject to the defendant's exception, there is quoted. At the close of the evidence the judge refused to order verdicts for the defendant, and thereupon the defendant in each case asked the judge to instruct the jury as follows:

"There is no evidence to support the first of the two specifications."

"There is no evidence to support the second of the two specifications."

The judge refused to give either of these instructions and submitted the cases to the jury.

The jury returned a verdict for the plaintiff in each case, in the first case in the sum of $4,500 and in the second case in the sum of $500. The defendant alleged exceptions.

*P. E. Costello*, for the defendant.

*E. C. Jenney*, (*S. Robinson* with him,) for the plaintiffs.

CROSBY, J. The plaintiff in the first action seeks to recover damages from the defendant, a physician, for alleged negligence in his treatment and care of her after she had given birth to a child. She will hereinafter be referred to as the plaintiff. The second action is brought by the husband of the plaintiff in the first action to recover consequential damages.

The plaintiff filed specifications of the unskilfulness and negligence of the defendant, alleged in her declaration in substance as follows: the first specification alleged that the defendant negligently directed that the plaintiff, while suffering from convulsions following childbirth, be restrained and held in bed by holding her by her wrists, whereby her shoulders became dislocated and fractured; the second specification alleged that after the plaintiff's shoulders had been fractured and dislocated, the defendant failed to discover her injuries and negligently pre-

scribed treatment which caused her great pain and resulted in permanent disabilities.

The plaintiff testified that she went to bed at about two o'clock in the morning of December 30, 1913, and was unconscious during the birth of her child; that she did not regain consciousness for a period of from twenty-four to forty-eight hours, and immediately thereafter she felt severe pains in her shoulders, "causing her terrible agony to move her fingers or hands."

The defendant testified that he went to the plaintiff's house at about half past seven o'clock on the morning of December 30, and found her suffering from violent convulsions; that she was unconscious; that he gave her injections of morphia to relieve her, and in order to restrain her that he and the nurse held her by the wrists. There was also evidence that the defendant directed the plaintiff's husband so to hold her if she had further convulsions; the husband testified that during the evening of the same day she had thirteen convulsions, and that on those occasions he held her in bed by her wrists. There was evidence that her shoulders had never been injured before she became unconscious. It appears from the undisputed evidence that about two weeks after the child was born, one of her shoulders was discovered to be fractured and the other dislocated.

While there was evidence from which the jury could have found that her injuries might have been caused solely by the convulsions, still there was other evidence to show that such injuries were due to holding her wrists to restrain her and that she was so held by the defendant's direction. On this conflicting testimony it could not have been ruled that there was no evidence to support the allegations of the first specification.

There was evidence that, after she became conscious and while her shoulders were in the condition above described, the defendant directed that they be manipulated, that by reason of such treatment she was caused great pain, and that the defendant at that time had failed to discover the fracture and dislocation; also, that such treatment was unskilful and negligent. This evidence was sufficient to support the allegations of the second specification.

The record shows that the presiding judge instructed the jury as to the duty required of an attending physician, and it is not contended that those instructions were not correct and sufficient. It

follows that the requests for rulings that there was no evidence to support the specifications were rightly refused. The motion to direct a verdict for the defendant in each case was denied properly.

The remaining exceptions relate to questions put to Dr. Jefferson, a medical expert called by the plaintiff. He was asked on direct examination, "Now coming to the left shoulder, Doctor, from your examination of the plate and Mrs. Connor and the evidence in the case, have you formed any opinion as to the cause of the present condition?" The exception to the admission of this question must be sustained. It is settled that an expert witness cannot be asked or allowed to express an opinion founded in whole or in part on the evidence where, as in the case at bar, it was conflicting. An important question at the trial was whether the fracture and dislocation of the plaintiff's shoulders was due to the convulsions alone or resulted from the convulsions together with the physical restraint exercised upon her by the defendant or under his direction.

It was said by this court in *Stoddard* v. *Winchester*, 157 Mass. 567, at page 575: "The proper way to interrogate an expert, to obtain his opinion on facts to be derived from testimony, is to put questions on hypothetical statements of facts, or to ask the witness to give opinions founded on possible views of the evidence, stating in connection with the opinions the hypothetical facts to which they relate, so as to make them intelligible. An expert witness cannot be asked to give an opinion founded on his understanding of the evidence, against the objection of the other party, except in cases where the evidence is capable of but one interpretation. In other words, questions must be so framed that the witness will not be called upon to give an answer involving his opinion on disputed questions of fact which are not proper subjects for the testimony of an expert, nor to intimate to the jury his opinion as to the credibility of any of the witnesses." *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169. *Chalmers* v. *Whitmore Manuf. Co.* 164 Mass. 532. *McCarthy* v. *Boston Duck Co.* 165 Mass. 165. *Rafferty* v. *Nawn*, 182 Mass. 503, 507. *Burnside* v. *Everett*, 186 Mass. 4. *Commonwealth* v. *Johnson*, 188 Mass. 382, 386. Wigmore on Evidence, § 681.

The exceptions not argued are treated as waived, the others need not be considered in detail as we do not perceive any error in the rulings of the presiding judge.

As the witness Jefferson was allowed to express an opinion founded in part on "the evidence in the case" which was conflicting, the exception thereto must be sustained; the others are overruled.

*Exceptions sustained.*