CHARLES S. SULLIVAN, petitioner, *vs.* ELIZABETH A. BRABASON & others.

Suffolk.    May 22, 1928.— June 29, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, & SANDERSON, JJ.

*Undue Influence. Unsound Mind. Will,* Validity. *Evidence,* Competency; Relevancy; Hospital record; Privileged communication; Opinion: expert; Hypothetical question; Interrogatories. *Practice, Civil,* Exceptions: harmless error; Interrogatories. *Witness,* Impeachment, Cross-examination, Redirect examination, Privileged communications. *Attorney at Law.*

Upon a petition for proof of an alleged will, an issue was framed for trial by jury as to whether the alleged will was procured to be made by the fraud or undue influence of the testator's brother, of the brother's wife, or of the petitioner. It appeared that the will, which was executed in December, 1922, was drawn for the testator by the petitioner, who was an attorney; that substantially all the testator's property, most of which had come to the testator through the will of a sister who died in 1922, was given by his will to his brother's wife; and that each of the respondents, two daughters of the testator, was given $1. At the trial of the issue, there was evidence that the testator, who died in January, 1923, was about sixty-one years of age at that time and had been in ill health for many years; that his wife died in 1904; that, because of ill treatment of the respondents by the testator, they and other children of his went in 1906 to live with their said uncle and his wife and thereafter lived with or near them, and were always treated with kindness by them; that the respondents saw their father on two occasions in 1906 when he was ill, and thereafter on one occasion in 1910 and 1922 and again on the day before his death; that the respondents did not know, and made no effort to find out, where their father was from 1910 to 1922, and never did anything for him; that the only aid given the testator by his relatives was furnished by the brother, who arranged for his funeral and notified the respondents of his death; that the testator came to the office of the petitioner, with whom he previously had had business, and stated that he would like to make a will; that at that time his brother came into the petitioner's office, and the testator said to him that the brother had been kind to him and he wanted him to have the property, to which the

brother replied that he did not want it and left the office; and that the will was witnessed by three persons connected with a court of which the petitioner was presiding justice. The trial judge ordered the jury to answer the issue in the negative. *Held*, that no error appeared, there being no evidence of a conspiracy, or of undue influence exercised upon the testator.

The issue above described was tried together with an issue as to the testator's soundness of mind at the time he executed the alleged will. *Held*, that

(1) Hospital records, relating to the decedent and referring to relatives or friends to be notified by the hospital authorities, were immaterial; and no prejudicial error appeared in either their admission or exclusion;

(2) A document, executed by the respondents and certified by the register of probate, in which the respondents offered to pay into court the amounts of all legacies given by the will to others than themselves and the wife of the testator's brother, in case it were disallowed, properly was excluded;

(3) No error was shown in temporarily excluding evidence offered, without prejudice to the right to renew the offer, where the offer was not later renewed;

(4) There being no evidence warranting a finding that the decedent's brother exercised or attempted to exercise undue influence upon him, no prejudicial error appeared in excluding evidence of a conversation between a witness and the brother, which was offered to contradict the brother's testimony and to show an attempt on his part unlawfully to influence the witness, but which fell far short of showing such an attempt;

(5) An exception to the exclusion of a question as to the testator's attitude toward religion and "the church" must be overruled in the absence of an offer of proof to show that the answer would be material;

(6) Exceptions to the exclusion of certain conversations must be overruled in the absence of anything to show what the conversations were or their relevancy;

(7) The extent to which a witness might be questioned on redirect examination concerning matters not testified to on cross-examination was within the discretion of the judge;

(8) A question, whether the testator's brother or any member of his family was a member of a certain religious society, was immaterial and rightly was excluded;

(9) The extent of cross-examination, and the extent to which the veracity and credibility of witnesses might be tested, rested in the discretion of the trial judge;

(10) The petitioner properly was allowed to testify to a conversation he had had with the testator about the testamentary disposition which the testator desired to make of his property; such conversation was not privileged after the testator's death;

(11) Questions asked on cross-examination of the petitioner, whether he had acted for the testator's brother in connection with the estate of their deceased sister, and respecting the matter about which the

brother's wife had consulted the petitioner two years previously, were immaterial and rightly were excluded;

(12) A question asked the petitioner, whether he knew of any facts before the will was drawn which would give the testator's brother or his wife any motive for getting the testator to make a will in favor of either of them, called for a conclusion and rightly was excluded, especially since, when asked by the judge what his answer would be, he replied, "I did not";

(13) A copy of the inventory in the estate of the testator's sister properly was excluded;

(14) A question asked of the petitioner in cross-examination, and an offer of proof, to show that the testator's brother was heavily in debt at the time the will was drawn, related only to a collateral matter and had no bearing on the issues which were being tried, and properly were excluded;

(15) No error appeared in the exclusion of questions asked the petitioner in cross-examination as to whether he thought it reasonable for the testator to feel resentment against his children for not calling upon him, or whether the petitioner before the will was drawn had given information to any of the interested parties other than the testator's brother respecting his sister's estate; such questions did not show a conspiracy to keep the testator's children in ignorance of the amount of the sister's estate;

(16) No error appeared in the judge's refusal to allow counsel to pursue further a certain line of inquiry in cross-examination; the judge properly should restrict the examination of the witness within reasonable limits;

(17) No error appeared in the exclusion of a question asked the petitioner in cross-examination, whether he did not know that his stenographer's notebook containing minutes of the instructions given for the drafting of the will, which, he testified, he had taken no steps to have her retain, would be valuable evidence if there were a controversy;

(18) A reason which the petitioner gave the undertaker, explaining why his bill for burial of the testator was not paid, was immaterial and properly was excluded;

(19) No error appeared in action of the judge limiting the cross-examination of certain witnesses, where his action did not appear to be arbitrary or unreasonable;

(20) A question asked of the testator's brother in cross-examination, whether he had creditors at the time the will was drawn, was irrelevant and rightly was excluded;

(21) The admission of a hypothetical question asked of a physician, to which objection was made on the ground that it contained elements that were not in evidence and other elements which were in controversy, was within the discretion of the judge; and an exception to such admission must be overruled;

(22) The exclusion of testimony of a witness which failed to contradict testimony given by the testator's brother, or to show that he had attempted to influence the witness, was not error;

(23) Evidence, offered to show that the wife of the testator's brother

knew before the testator's death that he had made a will, was irrelevant, and its exclusion was not error.

At the trial of the issues above described, there was certain evidence bearing on the testator's soundness of mind. An expert called by the respondents testified that in his opinion the testator was not of sound mind when he executed the alleged will. The judge in his charge, in referring to the expert's testimony, said to the jury that "just what unsoundness of mind meant by" the expert had no bearing in the case whatever if the testator came up to the standard required by law, in which event they should answer the issue in the affirmative; and that the jury might consider "not only the testimony of experts but all the evidence which bears on his [the testator's] mental condition and draw such inferences therefrom as to his mental condition as in their opinion all the facts warrant." *Held,* that no error appeared in such instructions; they made it clear that the jury were to consider the entire evidence in deciding the issue of mental capacity.

Before the trial of the issues above described, one of the respondents propounded to the petitioner certain interrogatories concerning official, professional and personal relations between him and the witnesses to the will. The petitioner declined to answer such interrogatories, and a motion by the respondent that he be ordered to answer them was denied. *Held,* that

(1) If such relations existed between the petitioner and the witnesses, the witnesses were not thereby disqualified;

(2) Such interrogatories raised collateral matters and the judge in his discretion properly might refuse to order them answered; no error appeared.

PETITION, filed in the Probate Court for the county of Suffolk on January 17, 1923, for proof of the will of Francis W. O'Brien, late of Boston.

Upon motion by two of the alleged testator's daughters, the issues described in the opinion were framed for trial by jury.

In the Superior Court, the petitioner declined to answer certain interrogatories, described in the opinion, propounded to him by one of the respondents, and a motion that he be ordered to answer such interrogatories was denied by order of *Morton,* J. The respondents alleged exceptions to such denial and presented a bill of exceptions in connection therewith.

The issues thereupon were tried before *Raymond,* J. Material evidence is stated in the opinion. At the close of the evidence, the judge ordered the jury to answer the second issue in the negative. The jury answered the first issue in the affirmative. The respondents alleged exceptions as described in the opinion.

*F. G. Bauer,* (*J. T. Kenney* with him,) for the respondents.

*L. A. Mayberry,* (*J. P. Feeney* with him,) for the petitioner.

CROSBY, J.  Issues were framed by the Probate Court for the County of Suffolk respecting the allowance of an instrument purporting to be the last will of Francis W. O'Brien, as follows: (1) "Was said Francis W. O'Brien of sound mind at the time of the execution of the instrument which is now propounded as his last will?"  (2) "Was the instrument propounded for probate as the last will of said Francis W. O'Brien procured to be made by the fraud or undue influence of James J. O'Brien, Nora M. O'Brien and some person employed by and acting in the interest of said James J. O'Brien or Nora M. O'Brien, or by the fraud or undue influence of any of said persons, exercised upon the said Francis W. O'Brien?"

The jury found in favor of the proponent upon the first issue, and were directed by the judge to answer the second issue in the negative.  The contestants are Elizabeth A. Brabason and Gertrude T. Bailey, daughters of the deceased. The case is before us on exceptions to the direction of the trial judge upon the second issue, to the admission and exclusion of evidence, and to certain instructions given to the jury.  The contestant Gertrude T. Bailey also filed a bill of exceptions to the refusal of a judge of the Superior Court to order answered certain interrogatories propounded to Charles S. Sullivan, named in the instrument as executor.

The alleged will was executed by the deceased on December 28, 1922, when he was about sixty-one years of age. He died at the Boston City Hospital January 13, 1923.  The hospital record states the cause of death to be chronic myocarditis, and as a contributory, secondary cause, chronic interstitial nephritis.  The instrument in question provides, in substance, for the payment of a debt due an undertaker for services rendered in connection with the burial of the wife of the deceased; for masses, $50; for an amount necessary for the perpetual care of a burial lot; for legacies of $100 to Alice T. Flynn, a sister of the deceased, and of $1 to each of his four children.  The residue is left to Nora M. O'Brien, wife of his brother James J. O'Brien.  There was evidence

tending to show that the estate amounted to about $32,000, all of which, except about $400, consisted of his share in the estate of his deceased sister, Annie A. Hayden, who died November 25, 1922.

It is the contention of the contestants that the instrument in question was procured to be executed by the deceased as the result of a conspiracy entered into between Mr. Sullivan, James J. and Nora M. O'Brien, and that it was executed by reason of the fraud and undue influence exercised by these persons. This contention raises the question whether there was any evidence which warranted the submission of the second issue to the jury or whether the direction of a negative answer was right.

The occupation of the deceased for many years had been that of a teamster, but during the last years of his life he had been employed as a stable man or watchman in the care of horses. His wife died in 1904, and thereafter he and his children continued to live together for about two years, but he ill treated them and they were afraid of him, and in 1906 his three daughters and a son went to live with their uncle, James J. O'Brien, and his wife, at their request, and occupied rooms on the top floor of his house, where they remained for eleven months, without any charge for rent. This uncle and his wife had five small children. During the time the contestants lived with their uncle one of the girls was employed, receiving $6 a week. Afterwards their Uncle James and his wife moved to a larger house and the children of the decedent lived near them. From the death of their mother to the present time it appears that James J. O'Brien and his wife treated the children with kindness and were always interested in their welfare. There was evidence that for many years before their father's death the children rarely ever saw him or knew where he lived; that at times he was in needy circumstances, but they never rendered him any assistance; that the only aid furnished him by any relatives was given by his brother James who, upon the death of the deceased, selected a casket and arranged for a priest, and for the funeral which was held at his house; and that he notified the children of their father's death.

Mrs. Brabason testified that she and her sister Mrs. Bailey called to see their father on two occasions when he was sick in 1906. She testified that when they called upon him the first time he accused their Uncle James of breaking up his home and taking his children away from him and said that this uncle and his wife would pay dearly for it. "I said, 'Look here, father, you know what you have done and you know that it is all your own fault, and that you had nearly a year after that to do better and you didn't do it, so you can't blame Aunt Norah and Uncle Jim for it"; that she did not see him again until 1910 when her brother was killed; that after the brother's funeral her father came to see her and made inquiry as to the particulars concerning her brother's death. She further testified that the next time she saw her father was after the death of her aunt Mrs. Hayden which occurred in November, 1922, when she saw him at her wake and at her funeral; that on those occasions she spoke to him, that he was very feeble and did not seem to know her; that she did not at that time try to find out where he lived in South Boston although he lived a short distance from her house; that she did not see him again until she was notified by her Uncle James that he was very ill, at the hospital, and, accompanied by her sister, Mrs. Bailey, she went there to see him. She testified that he was very sick; that she spoke to him but he made no reply; and that she asked him if he had had a priest and he shook his head. He died the next day.

The testimony of Mrs. Bailey did not differ in substantial particulars from that of Mrs. Brabason. When the latter saw her father as above testified to by her, Mrs. Bailey testified that she was present, but it did not appear that Mrs. Bailey had seen him on any other occasions. Both contestants testified that they did not know where their father was living from the year 1910 until their aunt died in 1922, and made no effort to find him, although it appears that they all lived in Boston after the mother died until the father's death. They further testified that they never did anything for him after they went to live at the house of their uncle. The evidence showed that for several years before his death

he suffered from kidney trouble which seriously affected his health; but there was evidence that from August, 1919, until the last of November, 1922, and shortly before the instrument in question was executed, he cared for twenty-seven horses.

There was evidence which tended to show that the decedent was of a stubborn disposition, that he was "cranky" and inclined to have his own way; that on the day the instrument in question was executed he went to the office of the proponent Mr. Sullivan, whom he had known for several years and with whom he had some business in connection with the estate of his sister, Mrs. Hayden, and stated to Mr. Sullivan that he was not feeling well and would like to make a will and dispose of his share in the property inherited from his sister; that his brother James came in while he was there; that the decedent said he would like to give the property to his brother James; that the latter said he did not want it, and that the deceased said, "Well, I want you to have it. You have been kind to me, and you have been interested in me, and whatever is coming in this estate is due to your efforts, and that of Judge Sullivan, and I wish to give it to you"; that James replied that he did not want it and did not want anything to do with it, and then walked out. If this evidence is disregarded, there is nothing to show that James O'Brien was present when the will was drawn and executed. The circumstance that it was witnessed by the clerk of the court over which Judge Sullivan presided, by a former assistant clerk of that court, and by the probation officer of the court, who was a sister of the judge, is not evidence of undue influence exerted upon the deceased by the judge.

A careful examination of the entire record fails to show any evidence whatever of a conspiracy as charged, or that James J. O'Brien, Nora M. O'Brien or Charles S. Sullivan influenced or attempted to influence the deceased to execute the instrument; nor is there any evidence from which it could be inferred that such influence was exerted by any of them. It follows that the trial judge rightly directed the jury to answer the second issue in the negative. Upon this question

the case is governed in principle by *Neill* v. *Brackett,* 234 Mass. 367.

During the course of the trial many exceptions were saved by the contestants to rulings of the judge respecting the admission and exclusion of evidence. The first exception is to the admission of a hospital record; the second is to the exclusion of another hospital record. Both relate to the deceased and refer to relatives or friends to be notified by the hospital authorities. Whether the rulings respecting either of these hospital records were or were not erroneous need not be decided. Their admission or exclusion had no material bearing upon any issue involved; accordingly no prejudicial error appears. See G. L. c. 233, § 79.

The contestants offered in evidence a paper, executed by them, certified by the register of probate, in which they offered, in case the alleged will was disallowed, to pay into court the amounts of certain legacies given therein, which included all the legacies except those given to themselves and to Nora M. O'Brien. This paper was rightly excluded. The rule relating to the effect of admissions by a legatee or devisee who has procured the will by improper means, and referred to in *Becker* v. *Becker,* 238 Mass. 362, 366, has no application in the case at bar.

The fourth exception is to the exclusion of evidence during the examination of one Keating. Counsel states that he offered "to show an attempt by James J. O'Brien to corrupt this witness and to buy his testimony." The judge said he would exclude the evidence at that time. The evidence was not finally excluded, but only temporarily and without prejudice to renew the offer; it does not appear to have been renewed until later during the trial. There is no merit in this exception. *Commonwealth* v. *Howard,* 205 Mass. 128, 154. This witness was recalled in rebuttal and testified that in February, 1923, James J. O'Brien came to his place of business. He was then asked as to what took place, and, on objection by the proponents, counsel for the contestants stated that he offered to show the substance of a conversation between the witness and O'Brien. This evidence was offered to contradict O'Brien and to show an attempt on his

part to tamper with this witness. The evidence was excluded subject to the contestants' exception. The offer of proof falls far short of showing any attempt on the part of O'Brien to influence the witness or to cause him to testify falsely. Even if the evidence tended to contradict the testimony of O'Brien and his entire testimony were disbelieved there was no evidence warranting a finding of undue influence exercised or attempted to be exercised by him on the decedent. Accordingly no prejudicial error is shown and exception thirty-five must be overruled.

The fifth exception is to the exclusion of the following question to Mrs. Brabason: "What attitude had your father shown during his lifetime when you had been with him toward religion and the church?" The question was rightly excluded. There was no offer of proof and nothing to show that the answer would be material upon any issue involved.

The seventh exception is to the exclusion of a conversation between Mrs. Brabason and her Uncle James to show the reason why her father was buried from the house of her uncle. No offer of proof was made as to what the conversation was or that it was relevant to any issue in the case.

On her redirect examination, this witness was asked respecting a conversation she had with her Uncle James on receiving a citation issued after the filing of the alleged will for probate. Its exclusion is exception eight. It does not appear what that conversation was. Besides, the extent to which re-examination of a witness may be carried with reference to matters not testified to on cross-examination is within the discretion of the court. *Kendall* v. *Weaver*, 1 Allen, 277.

The ninth exception is to the exclusion of the question whether the same witness knew that her Uncle James or any member of his family was a member of the society for the Propagation of the Faith. The answer was "No." The contestants' counsel then stated that he offered to show that the answer would be "yes" as to Nora O'Brien, wife of James. If the question had not been answered, it was wholly immaterial whether Nora O'Brien was or was not a member of that society.

Exceptions ten, eleven, twelve and thirteen were to the allowance of certain questions asked Mrs. Bailey on cross-examination. How far the cross-examination of a witness may be deemed helpful to the issue being tried, and the extent to which the veracity and credibility of witnesses may be tested, rest largely in the judicial discretion of the presiding judge. The allowance of the questions was not error. *Jennings* v. *Rooney*, 183 Mass. 577, 579. *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486. *Commonwealth* v. *Klosek*, 262 Mass. 416, 419.

The petitioner Sullivan, on direct examination, testified to a conversation he had had with the decedent respecting the testamentary disposition he desired to make of his property, and objection was made by counsel for the contestants on the ground that such communications were made to the witness as the attorney for the decedent. There is no merit in this contention. During the lifetime of the decedent an attorney drawing his will would not be allowed, without his consent, to testify to communications made to him concerning it, or to the contents of the will itself; "but after his death, and when the will is presented for probate, we see no reason why, as a matter of public policy, the attorney should not be allowed to testify as to directions given to him by the testator, so that it may appear whether the instrument presented for probate is or is not the will of the alleged testator." *Doherty* v. *O'Callaghan*, 157 Mass. 90, 93. An executor or administrator may waive the privilege in favor of the decedent's estate and may call upon the decedent's attorney to disclose as a witness communications made to him by his client. *Brooks* v. *Holden*, 175 Mass. 137. *Dunham* v. *Holmes*, 225 Mass. 68, 71, 72. *Panell* v. *Rosa*, 228 Mass. 594, 596.

Whether the proponent acted for James J. O'Brien in the transfer of the latter's interest in the Hayden estate to Nora O'Brien was not material, and the question asked of the proponent on cross-examination was rightly excluded. The question to the same witness on cross-examination as to what matter Nora O'Brien consulted him upon two years previ-

ously was also rightly excluded. Accordingly exceptions sixteen and sixteen-A cannot be sustained.

The proponent was asked if he knew of any facts before the will was drawn which would give James J. and Nora M. O'Brien any motive for getting the decedent to make a will in favor of either of them. This question called for a conclusion and was rightly excluded. The witness was then asked by the judge, "What would your answer be?" He replied, "I did not."

The contestants excepted to the exclusion of a certain copy of the inventory of the Hayden estate. There is nothing to show that it was admissible on any ground; it therefore was rightly excluded.

The proponent was asked on cross-examination if James J. O'Brien had been collecting rents as conservator of the estate of Mrs. Hayden up to the time an administrator was appointed. Counsel stated in this connection that he was prepared to show that O'Brien collected these rents and had not accounted for them; that he was heavily in debt at the time the will was drawn; "that the getting of this will was part of a scheme, . . . in order to cover up his misdoings in the Hayden estate and get money of which he stood in desperate need at the time the will was drawn"; and that he, his wife and Mr. Sullivan "were parties to that scheme." The exclusion of this question was not error. If the exception could be construed to include the offer of proof, evidence that O'Brien was in financial difficulties was a collateral matter which had no bearing upon the issue of undue influence or the mental capacity of the decedent to make a valid will. The nineteenth and twenty-ninth exceptions cannot be sustained.

There was no error in excluding the questions asked the proponent on cross-examination as to whether he thought it reasonable for the decedent to feel resentment against his children for not calling on him, or whether the witness before the will was drawn had given out any information to any of the interested parties other than James J. O'Brien respecting the Hayden estate. The questions had no tendency to show conspiracy to keep the decedent's children in ignorance

of the amount of the Hayden estate. So far as appears they could have ascertained such amount if they desired that information. Exceptions twenty and twenty-one are without merit.

During the cross-examination of the proponent, the judge declined to permit counsel for the contestants to continue a certain line of inquiry, on the ground that sufficient time had already been taken. To this action the twenty-second exception was saved. It was the right and duty of the judge to restrict the examination of the witness within reasonable limits, and no harm was done thereby.

The proponent was asked on cross-examination if he did not know that, if a controversy arose as to conversations between him and the testator previous to the drafting of the will, his stenographer's notebook containing minutes of the instructions given concerning the drafting of the decedent's will, which, he testified, he took no steps to have her retain, not giving it a thought, would be valuable evidence. No error is shown in the exclusion of this question.

What the proponent told Mullen, the undertaker, as the reason why the bill for the burial of the decedent had not been paid does not appear to have been material, and was rightly excluded.

There was no error in the action of the judge in limiting the cross-examination of certain witnesses. Such action does not appear to have been arbitrary or unreasonable.

James J. O'Brien was asked on cross-examination if he had some creditors at the time the will was drawn. This question was excluded subject to exception. Whether he had creditors or not had no relevancy to the issues involved, and the question was therefore rightly excluded.

Dr. Colburn, called by the proponent, was asked a hypothetical question, which was objected to by the contestants on the ground that it contained elements that were not in evidence, and other elements which were in controversy. "A hypothetical question rests upon either assumed facts already in evidence, or assumed facts which may be put in evidence. In determining the scope, fulness and distinctness of the questions much must be left to the discretion of the

presiding judge, which ought not to be overridden, unless it very clearly appears to have been wrongly exercised." *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527, 533. *Chalmers* v. *Whitmore Manuf. Co.* 164 Mass. 532, 533. *Commonwealth* v. *Johnson,* 188 Mass. 382, 385. *Taylor* v. *Creeley,* 257 Mass. 21, 26, 27. We are of opinion that the admission of the question was within the discretion of the judge. Accordingly the exception must be overruled.

The exclusion of the testimony of Mrs. Lyons was not error. The statement alleged to have been made to her by James J. O'Brien did not contradict his testimony and had no tendency to show an attempt on the part of O'Brien to influence her as a witness.

The exclusion of the offer to prove by Alice Flynn, who was recalled by the contestants, that Mrs. O'Brien knew before the death of the decedent that he had made a will, was not erroneous. This witness testified that Mrs. O'Brien told her that the decedent had remembered her, and afterwards testified that she thought that Mrs. O'Brien had used the word "will." If this evidence were competent to contradict Mrs. O'Brien, it had no relevancy upon the issues of mental capacity or undue influence.

At the conclusion of the judge's charge the contestants excepted to that portion of the instructions which referred to the testimony of Dr. Noble, an expert witness called by the contestants, who expressed the opinion that the decedent was not of sound mind when the instrument was executed. In this connection the judge, in referring to the testimony of the witness, said to the jury: "Well, now, just what unsoundness of mind meant by Dr. Noble has no bearing whatever in this case if he came up to the standard there required. What kind of language he is using, whether it is some technical language that calls for this standard of perfection or not I am not clear in my mind, but if he does come up to what the judge laid down in that case you will find in answer to that question yes so far as that doctor goes. . . . But you ought to take into consideration of course all of the testimony bearing on the question that you are to answer." After the attention of the judge had been brought to the

above part of his instructions, he told the jury that they might consider "not only the testimony of the experts but all the evidence which bears upon his [the decedent's] mental condition and draw such inferences therefrom as to his mental condition as in their opinion all the facts warrant." These final instructions made it clear that the jury were to consider the entire evidence in deciding the issue of mental capacity.

We have examined all the exceptions taken at the trial that have been argued, and have dealt with most of them specifically. We find no reversible error.

It remains to consider the exceptions taken to the refusal of the judge to order eight interrogatories filed by one of the contestants to be answered by the proponent. The tenth and eleventh are as follows: "10. On December 28, A.D. 1922, did any official, professional, business or personal relations exist between you and Mark E. Smith whose name appears as a witness to the instrument offered for probate in this proceeding? 11. If you answer the foregoing question in the affirmative, state fully and particularly what said relations with Mark E. Smith were." Similar interrogatories were propounded to the proponent with reference to the other two witnesses to the alleged will. The sixteenth and seventeenth are as follows: "16. Is said Elena M. Foley any blood relation to you? 17. If so, state fully and particularly what relation she is." Counsel for the contestants offered to show that said Smith was clerk of the court of which the proponent was judge; that Fitzpatrick was the assistant clerk; and that Elena M. Foley was one of the probation officers of said court and was a sister of the judge. We are of opinion that the question, whether official, professional or personal relations existed between the proponent and these witnesses, if answered, would have raised collateral matters and rightly could have been excluded in the discretion of the judge. If the relations referred to were shown to exist, they did not disqualify these persons as witnesses to the will in any respect, nor render them incompetent to testify as to the mental condition of the decedent to make a valid will. *Hancock* v. *Franklin Ins. Co.* 107 Mass. 113, 115.

It was said in *Cutter* v. *Cooper*, 234 Mass. 307, at page 316, that "exceptions ought not to be sustained unless there is solid foundation for belief that substantial injury has resulted. Interrogatories should not be suffered to become a training field for the saving of exceptions possessing only a theoretical merit, having no relation to the practical administration of justice." The refusal to order the interrogatories answered discloses no error.

It results that the exceptions saved at the jury trial, as well as those to the refusal of the judge to order interrogatories answered, must be overruled.

*So ordered.*